FLORIAN DOCKENDORF v. ANNETTE LAKIE
AND ANOTHER.
ST. PAUL-MERCURY INDEMNITY
COMPANY, INTERVENOR.

86 N. W. (2d) 728.

December 6, 1957—No. 37,149.

Johnson v. Bankers Mutual Cas. Ins. Co. 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199; Zeitler v. National Cas. Co. 124 Minn. 478, 145 N. W. 395.

144

*Gordon Rosenmeier* and *John E. Simonett,* for appellant.
*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *David W. Nord,* for respondent.

NELSON, JUSTICE.

This appeal involves a subrogation claim by a workmen's compensation carrier, as intervenor, pursuant to M. S. A. 1949, § 176.06, subd. 2, for reimbursement of benefits and medical expenses paid an injured employee, who had accepted such benefits prior to commencement of this action against a third-party tortfeasor. Plaintiff, the injured employee, counter-claimed for an accounting of the sums held by intervenor, pursuant to court order, and for apportionment of attorney's fees and costs. The principal issue is the procedural question of whether, as plaintiff-employee contends, the submission of a special verdict or interrogatory to the jury to determine the amount of medical expenses contributed by the workmen's compensation insurer was an absolute prerequisite to the preservation of the insurer's right to reimbursement for the medical expenses out of plaintiff's judgment.

Plaintiff-employee further contends that, where a workmen's compensation carrier shares in a recovery made against a third-party tortfeasor in an action brought in an injured employee's name under

§ 176.06, subd. 2, the employee having previously accepted compensation benefits from the insurer, it is obligatory upon the insurer to pay his proportionate share of the attorney's fees and costs incurred in obtaining that recovery.

The order from which this appeal is taken denied plaintiff's alternative motion for amended findings or a new trial. The relief sought is either final disposition of the appeal at the hands of this court or the granting of a new trial.

The plaintiff, Florian Dockendorf, was injured while a passenger in one of two vehicles which collided at an intersection near Barnesville, Minnesota, September 29, 1948. Shortly thereafter, on November 6, 1948, the plaintiff engaged the law firm of King & Fenske, Long Prairie, Minnesota, as his attorneys and instructed them to commence a personal-injury lawsuit against the owners of the other vehicle involved in the collision. Mr. Frank L. King of the law firm of King & Fenske started this litigation in January 1949.

Plaintiff was employed at the time of the collision and he immediately claimed and received benefits to which he was entitled under the Minnesota Workmen's Compensation Act. His employer's workmen's compensation insurer, the St. Paul-Mercury Indemnity Company, intervenor, paid plaintiff $1,647, directly, in the form of periodic benefits and paid to the plaintiff, or necessarily expended on his behalf, $4,-272.58 for physicians, hospitals, nurses, and miscellaneous medical bills. No one contends that employer's insurer did not pay plaintiff all sums he became entitled to under the Workmen's Compensation Act.

■ While the action to recover for plaintiff's personal injuries was pending, conversations were had between plaintiff's attorney, Mr. King, and the insurer's attorney and representative, Mr. K. C. Weyl. Mr. Weyl was informed by Mr. King that there would be no necessity for the insurer to intervene at the trial of the action since they would be perfectly agreeable to protecting insurer's rights without its formal intervention. Mr. Weyl was also informed that it was perfectly agreeable to the attorney representing the defendants, a Mr. Vogel, as well as to Mr. King, to protect the rights of the insurer without its intervening formally. Insurer, relying on the representations, delayed its applica-

tion for intervention and made no appearance at the main trial.

The trial judge at the conclusion of the present action in intervention, now on appeal, found:

"That plaintiff and his attorney were advised of intervenor's claim prior to the trial of said action, and that plaintiff, through his attorney, assured intervenor that it would not be necessary for it to intervene in said action, and that plaintiff would protect its rights as fully as if it were a party to the action."

We agree with the finding of the trial court that in view of the statements of counsel for the parties to the main action, the right of the insurer to apply for intervention at a later date was fully preserved. Section 176.06, subd. 2, which was applicable to the situation at the times here involved, provides in part that:

"Where an injury or death for which compensation is payable is caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, * * * legal proceedings may be taken *by the employee* or dependents against such other party or parties to recover damages, *notwithstanding the payment by the employer or his liability to pay* compensation hereunder, but in such case, if the action against such other party or parties is brought by the injured employee, or, in case of his death, by his dependents, and a judgment is obtained and paid or settlement is made with such other party, either with or without suit, the employer shall be entitled to deduct from the compensation payable by him the amount actually received by such employee or dependents after deducting costs, reasonable attorney's fees and reasonable expenses incurred by such employee or dependents in making such collections or enforcing such liability; * * *." (Italics supplied.)

This statute then gives the trial court discretionary power to allow the employer, or its compensation insurer, to intervene in the action if the employee fails to prosecute the action diligently or it is otherwise necessary to protect the rights of the employer. It further provides against the splitting of causes of action in the following words:

"* * * provided, that in no case shall such party be liable to any

person other than the employee or his dependents for any damages growing out of or resulting from such injury * * *."

No one disputes the right of the plaintiff to maintain and prosecute to completion the action which he commenced against the third-party tortfeasors under the provisions of § 176.06, subd. 2, notwithstanding payments of benefits and medical expenses had theretofore been made to him by employer's insurer; neither can it be disputed that employer's insurer was entitled to make its application to intervene in said action in order to establish its right to reimbursement.

■ The record discloses that, before trial of plaintiff's action, defendants' attorney made a settlement offer which was substantially in excess of the verdict ultimately rendered and, at plaintiff's request, insurer agreed to reduce its subrogation claim proportionately to facilitate the settlement which plaintiff's counsel recommended that plaintiff accept. However, plaintiff, acting on advice of others than his own attorney, rejected what would have been an advantageous settlement. The result was that the case was tried and the jury returned a verdict in a lesser amount. The size of the verdict, although $12,000, appears to have been disappointing to the plaintiff.

Plaintiff moved for a new trial which was denied. Although informed of his right to appeal, plaintiff either neglected or refused to authorize an appeal. Later plaintiff refused to accept payment of judgment in his favor in the amount of $12,183.10 and refused to pay his attorney's fees, disbursements, and advancements. Thereupon the insurer, in December 1949, served a notice of motion to intervene under § 176.06, subd. 2, requesting reimbursement of benefits paid to plaintiff or disbursed on his behalf. Plaintiff's attorney served a notice of motion accompanied by an order to show cause why plaintiff should not pay his attorney's fees, costs, and disbursements. Both motions were made returnable January 7, 1950. Defendants served a petition for an order requiring Mr. Dockendorf to appear January 7, 1950, to show cause why he should not execute a satisfaction of the judgment or in the alternative for an order directing the clerk to enter a satisfaction upon payment of the amount of the judgment into court by the defendants. Appearances were made on January 7, 1950, by plaintiff, Mr. King, his former attorney, Mr. Vogel, defendants' attorney, and Mr. Weyl in behalf of in-

tervenor. Since plaintiff under the circumstances lacked personal representation, the court ordered that the hearings on all the motions and the order to show cause be continued until January 14, 1950, at which time all the parties reassembled, with the exception of the plaintiff who made no appearance either personally or by counsel. The court thereupon ordered the clerk of court to satisfy the judgment against defendants upon payment into court of the amount of the judgment. It granted insurer's motion to intervene and ordered the clerk to retain $6,360.89 out of the amount of said judgment pending the outcome of the insurer's action in intervention. It also ordered payment to Mr. King of his attorney's fees together with interest and his advancements and disbursements from the proceeds of the judgment.

St. Paul-Mercury served its summons and complaint in intervention upon the plaintiff January 26, 1950. On January 28, 1950, defendants paid $12,625.10 into court and received their satisfaction of the judgment.

Plaintiff-employee made no answer to the complaint in intervention and on March 1, 1950, the trial court made and entered its findings of fact, conclusions of law, and order for judgment in favor of St. Paul-Mercury Indemnity Company as intervenor. Judgment was entered and all disbursements made in compliance with the trial court's order. Intervenor received $6,360.89 and filed its satisfaction of judgment.

Plaintiff engaged other counsel and took the position that his employer's compensation insurer was not entitled to reimbursement for medical expenses. Plaintiff claimed that intervenor was not entitled to subrogation because it had not sought intervention at the first trial; that it was not entitled to repayment of the money it had expended for plaintiff's medical expenses; and that the intervention proceedings were subject to objection because of a technical flaw invalidating the entry of judgment. Judgment had been entered against the party plaintiff and was therefore defective. The trial court thereupon ordered vacation of intervenor's judgment and allowed the plaintiff to answer the complaint in intervention. Intervenor appealed from that order. Plaintiff contended that neither the employer nor his workmen's compensation insurer was entitled to reimbursement of medical expenses.

Intervenor asked for a determination of the question: "May an em-

ployer's workman's compensation insurer recover medical benefits paid an injured employee from the proceeds of a judgment in a negligence action brought by the employee against a third party who caused his injuries?" The plaintiff pressed for a determination of the question whether an employer's workmen's compensation carrier may recover the amount of medical benefits paid by it for treatment of an injured employee out of the proceeds of a judgment in an action brought under § 176.06, subd. 2, by the employee against the third party who caused his injury.

The decision on appeal is reported in Dockendorf v. Lakie, 240 Minn. 441, 61 N. W. (2d) 752. This court upheld the trial court's ruling concerning the technical procedural flaw in the judgment. It held, however, that under § 176.06, subd. 2, the subrogation rights of an employer are not limited merely to the recovery of periodic disability benefits paid, but that such subrogation rights include payments for medical expenses. In reaching that conclusion the court said (240 Minn. 448, 61 N. W. [2d] 756):

"* * * Our conclusion is fortified by the realization that, if we were to hold that the term compensation does not embrace medical expenses paid, we would thereby, contrary to § 645.17(1), attribute to the legislature an intent to bring about the absurd and unreasonable result that an employee is to be permitted to recover twice the amount of his medical expenses, namely, once from the employer (or his compensation insurer) and once more from a third-party tortfeasor."

This court clarified, by that decision, what the word compensation means, as employed in § 176.06, subd. 2, by its statement that in the light of the history of these statutory provisions, coupled with their judicial interpretations of long standing, we can only conclude that the word compensation includes not only the periodic disability benefits paid, but also the medical expenses paid.

Insurer had delayed its application for intervention on assurances that its subrogation rights would be protected. It therefore did not participate in the first trial. Thus plaintiff in the main action directly assumed the burden of protecting, to the extent justified by results, the insurer, a burden which indirectly existed under the provisions of the statute even without any special agreement. The court in affirming the

orders of the trial court on the first appeal ruled that, if a subsequent subrogation action should follow on the part of the employer, or his insurer, the plaintiff-employee should only be required to reimburse the employer for medical expenses paid or expended on his behalf to the extent that he had received an award therefor under the jury's verdict. This court in reaching its conclusion in the first appeal said (240 Minn. 448, 61 N. W. [2d] 756):

"It is not amiss to call the attention of trial courts to the importance, in actions brought under § 176.06, subd. 2, against a third-party tortfeasor, of requiring a special verdict on the issue of special damages for medical expenses. In the absence of such special verdict, it is impossible to determine whether the jury allowed anything to the employee for medical expenses."

The court's comment was intended as a suggestion to the trial courts that in future cases of this kind they ought to require a special verdict from the jury on the issue of medical expenses. The words used therein were entirely unnecessary to the decision of the case on the first appeal. Obviously, the foregoing words constituted an incidental or collateral expression applicable only to future cases. Hence, the statement has no effect and is not controlling in the instant case, now on appeal, wherein the record discloses why the insurer did not participate at the main trial as well as the conditions upon which the insurer was assured that the plaintiff would protect its subrogation rights.

When the case was remanded following its disposition on appeal, an amended complaint was interposed. Plaintiff answered and contended that the burden was on the intervenor to prove that the jury included medical expenses in its verdict, asserting that it was impossible so to prove and relying on Dockendorf v. Lakie, *supra*. The matter came on for hearing before the court without a jury. In view of plaintiff's contention, excerpts from plaintiff's testimony were introduced, together with pertinent portions of the trial court's charge. It was stipulated and agreed that the affidavits theretofore filed by the plaintiff and by the intervenor in their cross-motions for summary judgment might be considered by the court to the same extent as though the affiants therein were present and testified before the court. The plaintiff's testimony enumerated the various items of medical expense and included his

opinion as to reasonable value thereof. One of the larger hospital bills was stipulated to between the parties as to amount and reasonable value. The excerpts from the testimony disclose no challenge or contrary testimony as to amounts or reasonable value and no cross-examination as to those items. It appears that the trial court had instructed the jury that the plaintiff "would be entitled to the hospital and medical expenses, [and] his transportation to and from the various places where it was reasonably necessary for him to go."

The trial court in the instant case found as follows: "That plaintiff introduced evidence in said action as to the reasonable value of the medical and hospital services rendered in his behalf in a total amount larger than the claim asserted by the intervenor in its complaint herein. No evidence to the contrary was offered by the defendants." The court awarded plaintiff $441.31 upon his counterclaim, limiting the total amount which the intervenor was authorized to retain to $5,919.58.

· Considering the evidence and the court's instructions to the jury in the main case, we think a foundation has been established for the operation of a presumption that the jury awarded plaintiff his medical expenses as a part of the jury's verdict. By his own testimony his medical expenses amounted to $4,424.14. It is to be presumed upon the basis of this evidence that the jury obeyed the trial court's instructions and rendered its verdict accordingly.

The trial court in the instant case relied upon Hayward v. State Farm Mutual Auto. Ins. Co. 212 Minn. 500, 4 N. W. (2d) 316, 140 A. L. R. 1236, in support of its findings of fact and conclusions of law as entered at the end of the trial.[1] The close similarity of the Hayward case to the case at bar cannot be denied. That case involved a collision of two automobiles. Hayward was injured and his car damaged. His collision insurer paid him for his car damage. Subsequently, Hayward

[1]See, Dockendorf v. Lakie, 240 Minn. 441, 61 N. W. (2d) 752; Nyquist v. Batcher, 235 Minn. 491, 51 N. W. (2d) 566; Gleason v. Geary, 214 Minn. 499, 8 N. W. (2d) 808; Joel v. Peter Dale Garage, 206 Minn. 580, 289 N. W. 524; McGuigan v. Allen, 165 Minn. 390, 206 N. W. 714; Patterson v. O'Neil, 151 Minn. 15, 185 N. W. 948; Kelley v. Chicago, B. & Q. R. Co. 142 Minn. 44, 170 N. W. 886; Hirsch v. Bayne, 112 Minn. 68, 127 N. W. 389; Pierce v. Wagner, 29 Minn. 355, 13 N. W. 170.

brought suit to recover for his personal injuries and car damage. His collision insurer notified his attorneys of its claim to subrogation, but they ignored the insurer's request to protect its rights. Hayward introduced evidence of the damage of his automobile at the trial. The trial court submitted the issue of Hayward's car damage to the jury under proper instructions, just as the trial court did in the first trial involved in the case at bar. This court held that (212 Minn. 504, 4 N. W. [2d] 318) "There was substantial evidence of damage to the car before the jury, it was included in the pleading, and it was covered in the court's charge to the jury. Therefore, it is included in the verdict." Hayward claimed, as the plaintiff now claims, that no one could really tell just how much the jury allowed for his special damages. The court's answer to Hayward's contention in that case is decisive here. This court stated its reasons for denying Hayward's contentions in the following terse language (212 Minn. 504, 4 N. W. [2d] 318):

"* * * True, there is no way of telling just what the jury actually allowed plaintiff for damage to the car, but whatever there was would, under the doctrine of subrogation, be held in trust by plaintiff for the insurance company. * * * The complaint showed definitely that recovery was sought for $650 damage to the car, which exceeded the amount to which the company was subrogated. The company was fully justified in believing that competent counsel would try the case according to the pleadings and that, *since plaintiff had in his pleading assumed the obligation of recovering the damages upon which the law impressed a trust in favor of the company, he would offer competent proof and ask for a special finding if he desired one.* As trustee, we conceive it to have been his duty to do so. * * * The burden was then on him to protect the interest of his *cestui que trust.* If he desired assistance in protecting that interest he should have demanded it. *As a trustee, if he wanted to know how much the jury would include in its verdict for damage to the car, he should have asked for a special finding.* It was he who was to hold the recovery for such damage in trust for the insurance company. He, not his *cestui que trust,* had the management of the case. Not having asked for the finding, the only inference is that he was satisfied to take the amount he had received as a basis for computing what he would hold in trust for the company. *No*

*other rule would be just.*" (Italics supplied.)

■ It is clear that § 176.06, subd. 2, by its terms permits an employee to accept workmen's compensation and sue a third-party tortfeasor, and expressly limits the right of subrogation, aside from certain suit costs, expenses, and attorney's fees, to the amount of workmen's compensation benefits paid the employee, the purpose of its subrogation provision being that of reimbursing the employer to the extent of his contributions under the act, the workman taking the excess.

■ The trial court in the case at bar had the benefit of having placed before it the evidence produced at the main trial relative to the medical expenses, together with the procedure taken and the instructions of the court given on submitting that issue to the jury.

Plaintiff chose to suggest that insurer delay its application to intervene and absent itself from participation in the first trial without prejudice to its rights; he could have asked for the aid of the insurer through intervention, but he did not. If plaintiff felt the necessity of a special finding on the amount of the medical expenses, he could have requested it, but he did not. We think the trial court was clearly justified in finding in the intervenor's favor in the case at bar and in concluding in its memorandum as follows:

"This case appears to be even stronger than the Hayward case against the trustee for the reason that the plaintiff here had agreed to protect the intervenor's rights, and had assured intervenor that it would not be necessary for it to intervene in the action. It is also clear that plaintiff was awarded damages by reason of medical and hospital expenses by the jury, which he in equity and good conscience should pay over to the intervenor."

When the record of the trial in the instant case is viewed in its entirety, it becomes clear that the dictum of this court in the prior opinion suggesting to the trial courts the importance of requiring a special verdict in similar future actions against third-party tortfeasors on the issue of medical expenses, is not controlling and does not indicate the law applicable to the facts under consideration in the instant case.

In our view, the record before the court on this appeal amply establishes that the plaintiff did receive such an award for medical ex-

penses and that it was included in the jury's verdict pursuant to the ruling in the Hayward case, which has not been overruled by this court's decision in Dockendorf v. Lakie, *supra*.

Plaintiff's claim that the court erred in denying apportionment of attorney's fees together with certain expenses and costs, based upon the contention that the insurer did not follow the procedure described in § 176.06, subd. 2, and therefore is not entitled to full subrogation is without merit. We think the evidence in the record from the proceedings in the first trial, including plaintiff's agreement to protect intervenor's rights, amply supports the conclusion that he voluntarily made himself a trustee as to any and all compensation payments contributed by the insurer.

Plaintiff's contention that if his first point, which was that insurer is not entitled to recover the medical expenses contributed because § 176.06, subd. 2, must be obeyed, and that the prior Dockendorf decision is the law of the instant case is denied, then the court must if it should hold that the parties did not follow the procedure prescribed by § 176.06, subd. 2, imposing upon the plaintiff the duties of a trustee, decide that equity requires an apportionment of the attorney's fees, necessary expenses, and costs is also without merit.

We are required to apply the following provisions of § 176.06, subd. 2, to the facts in the instant case with respect to the right of the employer to deduct from compensation benefits payable by him amounts collected by the employee from a third party:

"* * * the employer shall be entitled to deduct from the compensation payable by him the amount actually received by such employee * * * after deducting costs, reasonable attorney's fees and reasonable expenses incurred by such employee * * * in making such collections or enforcing such liability; * * *."

Under the aforesaid statutory provision the employer is entitled to deduct the amount of compensation benefits he has paid the employee without any deduction of costs, reasonable attorney's fees, and expenses incurred by the employee either in making collection or in enforcing liability.

Our legislature by the adoption of L. 1953, c. 755, § 6, added a new subdivision (M. S. A. 176.061, subd. 6), revising and amending the

rule with regard to costs, reasonable attorney's fees, and expenses incurred in making collection from and enforcing liability against a party other than the employer. This new subdivision reads as follows:

"As between employer and employee or his dependents, in all actions governed by this subdivision the employer shall bear that proportion of the costs, reasonable attorney's fees, and reasonable expenses incurred in making collection from and enforcing liability against the party other than the employer which the amount claimed by the employer for deduction from, or to be retained against, compensation payable bears to the whole amount recovered from such other party."

Section 176.061, subd. 6, now casts upon the employer, in similar actions, the burden of standing a pro rata share of costs, reasonable attorney's fees, and reasonable expenses in enforcing liability against and collecting from a third-party tortfeasor. We so held in the recent case of Lang v. William Bros Boiler & Mfg. Co. 250 Minn. 521, 85 N. W. (2d) 412, but stated therein that a determination of what is a reasonable attorney's fee rests with the trial court and not with the employee's attorneys. The aforesaid § 176.061, subd. 6, is not retroactive and therefore the employer in the case at bar is entitled to deduct the amount of the compensation benefits paid the employee without any pro rata deduction of the attorney's fees, costs, or expenses incurred by employee.

■ We, therefore, reach the conclusion, based upon the record submitted and the recovery made by the plaintiff against the third-party tortfeasor, that the intervenor is entitled to receive the full amount of benefits paid, including medical expenses, without deduction of attorney's fees, necessary expenses, or costs incurred by plaintiff at the first trial.

Affirmed.

Mr. Chief Justice Dell took no part in the consideration or decision of this case.