148 So.2d 601

Edward A. TULLIER

v.

The OCEAN ACCIDENT AND GUARANTEE CORPORATION, Ltd.

No. 46244.

Jan. 14, 1963.

Loeb & Livaudais, Stanley E. Loeb, New Orleans, for appellant.

Sidney W. Provensal, Jr. (of Cahn & Provensal), New Orleans, for appellee.

SANDERS, Justice.

This workmen's compensation proceeding presents for decision the single issue of whether statutory penalties and attorney's fees should be assessed against the defendant insurance company, the unsuccessful litigant.

After trial, the district court rendered judgment in favor of the plaintiff for workmen's compensation based on permanent and total disability, medical expenses in the sum of $11,716.00, a 12% statutory penalty on the accrued compensation and medical expenses, and attorney's fees in the sum of $5,000.00. The Court of Appeal reduced the attorney's fees to $3,000.00 and, as thus amended, affirmed the judgment of the district court.[1] We granted certiorari to review the judgment of the Court of Appeal,

---

1. 141 So.2d 521.

limited to the question of penalties and attorney's fees.

The plaintiff, Edward Tullier, was employed by Empire Machine Works, Inc. as a mechanic. On May 17, 1961, while driving his employer's truck in the course and scope of his employment, he collided with the rear of another vehicle. In the collision, Tullier was thrown against the steering wheel and received a blow in the region of his left chest. He was examined on the same day by Dr. James T. Reeves, physician and Coroner of Plaquemines Parish. The physician located the greatest point of tenderness over the seventh left rib on a line drawn from the middle of the armpit downward. Stethoscope examination of the heart was normal. After Tullier declined an X-ray for detection of fractured ribs, the physician prescribed a rib belt.

Tullier returned to work the next day. However, he was absent from work because of his injury from May 19 through May 29. X-rays revealed that he had a fracture of the seventh rib on his left side. He lost a total of 7½ days from his employment. During this period he was treated by Dr. Reeves, but he also consulted Dr. E. F. Salerno. On May 29, Tullier informed Dr. Reeves that he felt sufficiently recovered to return to his employment. With the approval of the physician, he returned to work on May 30. However, his subsequent work was attended with complaints of pain in the region of his injury.

On July 2, 1961, Tullier suffered a heart attack while fishing for his own pleasure in a motor boat. Because of his serious condition, he was hospitalized. His condition was diagnosed as a myocardial infarction, the death of muscle fiber of the heart because of the lack of blood.

On or about August 1, 1961, the plaintiff retained an attorney to represent him in a claim for workmen's compensation based on the heart attack. The attorney made demand on the defendant insurer asserting that the heart attack was caused by the accident of May 17. On August 2, 1961, without admitting liability for the heart attack, the defendant insurer transmitted a draft to plaintiff covering workmen's compensation through July 23, 1961. However, the insurer declined to pay, at this time, the substantial medical and hospital expenses which had accrued after the heart attack. On August 17, the plaintiff instituted suit for workmen's compensation, medical expenses, penalties and attorney's fees, based on alleged permanent and total disability arising from the heart attack.

The trial was commenced on October 13, 1961. The salient issue was whether the accidental injury of May 17 caused the heart attack of July 2. This issue has been finally resolved against the defendant.

The assessment of penalties and attorney's fees in the instant case is governed by LSA–R.S. 22:658, which provides:

"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. * * *"

■ Under the basic statute, it is clear that penalties arise only from an arbitrary and capricious refusal by the insurer to pay a just claim after sixty days notice of the loss.[2] The statute does not authorize the assessment of penalties merely because the insurer is the unsuccessful litigant.

■ In assessing penalties, the Court of Appeal held that the 60-day statutory period ran from May 17, 1961, the date of the truck accident. Finding no payment of workmen's compensation after May 29, it concluded that the statutory period had elapsed prior to the filing of suit. As an additional basis for the imposition of penalties, the court adopted the view that the statutory period can be disregarded when the payments of compensation are not being currently made when suit is filed. The court held that under the circumstances the failure of the defendant insurance company to pay workmen's compensation and medical expenses was arbitrary, capricious and without probable cause.

ʻ We cannot subscribe to this holding. In our opinion, the penalty period cannot be calculated from May 29, which was prior to the disabling heart attack. The record reflects that with the approval of the attending physician, the plaintiff had returned to his employment on May 30, and was so employed during the work week preceding the heart attack. Neither of the two physicians who had examined and treated him

2. Finley v. Hardware Mutual Life Insurance Company, 237 La. 214, 110 So.2d 583; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695. See also

Sbisa v. American Equitable Assur. Co., 202 La. 196, 11 So.2d 527, 145 A.L.R. 332, as to waiver of the formal requirements of the statute.

for his injury had detected any coronary disturbance or heart involvement. The defendant insurer was entitled to rely upon the medical findings of the attending physician during this period in the absence of conflicting medical information.

Substantially less than sixty days elapsed from the heart attack until the institution of suit. Approximately sixteen days elapsed from demand by plaintiff for compensation based on the heart attack until suit. Moreover, after demand, on August 2, the insurer delivered a draft to plaintiff for compensation through July 23. The Court of Appeal declined to consider this payment on the issue of penalties because the draft, although introduced in evidence, was not physically in the record on appeal. We find this to be error, for the delivery of this specific draft is admitted in plaintiff's petition.

We note that the plaintiff contends that this draft and those subsequent to it did not constitute payments of workmen's compensation because they bore a notation indicating that they were for "temporary, total disability" during the designated period. The plaintiff, it is argued, was justified in refusing to accept these drafts because he could not cash them without prejudice to his claim that the disability was permanent. We must reject this contention. Under the workmen's compensation law, no prejudice could have resulted.

The contention is both without merit and foreclosed by the following joint stipulation entered by counsel at the trial:

"It is further stipulated that the defendant has paid compensation from May 19, 1961 through May 29, 1961, and from July 1, 1961 to September 18, 1961, at the rate of $35.00 per week or the total of $455.00."

At the time suit was filed, the defendant insurer was then engaged in its investigation to determine whether there was a causal relation between the accidental injury and heart attack. Among other things, this involved a study of the case by medical experts and a report. Plaintiff concedes in his brief that the medical reports from the two medical experts selected by the insurer were not completed until after suit was filed. The report of one of the experts was completed on September 1, 1961 and the report of the other, the cardiologist, was completed on September 18.

The insurer paid compensation to September 18, 1961 and the sum of $784.00 toward the expenses of trained nurses required to care for plaintiff. Based upon the medical reports of Dr. George E. Burch and Dr. Samuel B. Nadler that the heart attack was not caused by the accidental injury, the insurer discontinued compensation on September 18, 1961.

Dr. Burch is the only specialist in cardiology who testified at the trial. He is

head of the Department of Medicine at Tulane University. He is also Editor of the American Heart Journal, a national or medical texts, on the heart. In the field publication. He has authored eight books, of research, he has published 200 papers on subjects related to the heart.

Dr. Samuel B. Nadler is a specialist in internal medicine, which includes the diagnosis and treatment of diseases of the heart. He has occupied the position of professor of clinical medicine at Tulane University Medical School since 1938.

Both of these specialists appeared as expert witnesses for the defendant insurance company at the trial. Dr. Burch had formulated his opinion from a study of the hospital records and electrocardiograms. Dr. Nadler had developed his opinion from a study of the hospital charts and records, electrocardiograms, X-rays, and the medical reports of Dr. E. F. Salerno, Dr. James T. Reeves, Dr. John Signorelli, Dr. Joseph E. Schenthal, and Dr. Keith Reemtsma, all of whom had either examined or treated the plaintiff.

While the hospital records and reports were not introduced in evidence, each of the two specialists made a reasonably clear statement of the medical facts upon which his professional opinion was based. These basic facts were also largely reflected in the testimony of the attending and examining physicians, who testified at the trial. Neither the date of the accidental injury nor the diagnosis of myocardial infarction were in dispute. The only dispute on basic medical data was whether the plaintiff improved after his injury on May 17. Under the circumstances, the testimony of these expert witnesses possesses probative value. Hence, their testimony must be considered on the issue of statutory penalties.

Without detailing the evidence of these physicians, it is sufficient to note that each of them testified that there was no causal relation between the injury and heart attack. Dr. Nadler was of the opinion that there was no "possible" connection.

Both specialists expressed the opinion that the time intervening between the injury and heart attack (a period in excess of six weeks) was too long for a causal connection between the two. Dr. Nadler was of the opinion that fourteen days was the maximum period for the development of such an infarction from a bruise or traumatic injury to the heart. Dr. Burch stated that upon injury to the heart, an infarction arising from the injury could be "expected" to develop within fourteen days.

Both specialists interpreted the electrocardiograms as evidencing a fresh infarction bearing no relationship to an old injury.

In reference to the failure of the attending physician to detect heart involvement after the injury of May 17, Dr. Burch testified:

"Q. Could that condition remain so subclinical that it would be undetected in the period of six weeks and four days?

"A. This is completely possible but unlikely.

"Q. Unlikely?

"A. Yes.

"Q. In your experience, have you ever seen such a situation?

"A. No, I never have."

The defendant insurance company also produced Dr. James T. Reeves who treated plaintiff for his injury in the truck accident. This treatment covered the period from May 17 through May 29. In this treatment, the physician detected no coronary disturbance or heart involvement. Dr. Reeves released plaintiff to return to work after May 29. He stated, however, that pain from such a rib fracture could be expected for an additional period of time.

Because of his physical condition, the plaintiff did not testify at the trial. He produced as medical experts Dr. E. F. Salerno, Dr. John Signorelli, Dr. Joseph E. Schenthal, and Dr. Keith Reemtsma.

The testimony of these physicians preponderantly supports plaintiff's demand. Without, in any way, detracting from the probative force of their testimony, we must state that it leaves ample room for genuine dispute as to causal connection between the accident and heart attack.

With commendable frankness, Dr. Keith Reemtsma testified during the course of cross-examination:

"Q. When did you change your opinion from 'perhaps related' to 'probably related to the accident?' Or have you changed your opinion?

"A. That is a question of uncertainty that I have. Didn't know that a significant change in my thinking would—in my thinking, I would still call it perhaps or probably.

"Q. You still say perhaps?

"A. That's correct.

"Q. Other things could have caused the condition?

"A. That is correct.

"Q. Did you examine the X-rays and electrocardiograms and—

"A. I did.

"Q. And all of the clinical data?

"A. I did.

"Q. What did you think he had? How did you relate the accident to the condition?

"A. I suspected and, again, this is unproved—but I suspected that the injury to his anterior chest wall, which was severe enough to produce a rib fracture and bruising, might have damaged the anterior wall of the heart and probably the

coronary vessels. That this damage was such that it was not immediately apparent, other than that there was chest pain with exertion. That subsequently, in July, he developed an extension of a process-myocardial infarction. This is conjectural.

"Q. Conjectural?

"A. Yes."

Dr. Joseph E. Schenthal testified in part:

"Q. Doctor, let me see if I understand your testimony. You have no proof that this man sustained a myocardial contusion.

"A. No, I have not one hundred per cent proof.

"Q. And you admit that he could have sustained or suffered the myocardial infarction without the intervention of any accident?

"A. There is a possibility.

"Q. It is not unusual, in men fifty-four, who do work like he did and who are older in body than in years, as Mr. Tullier is, is it?

"A. It is not unusual."

We conclude, from our review of the record, that there was a bona fide and serious dispute as to whether the accidental

injury caused the heart attack six weeks later. Under the circumstances of this case, we are of·the opinion that the actions of the defendant insurer were neither arbitrary, capricious nor without probable cause. Hence, the assessment of statutory penalties and attorney's fees is unwarranted.[3]

For the foregoing reasons, the judgment of·the Court of Appeal, insofar as it assesses penalties and attorney's fees against the defendant, is reversed. All costs in this Court are assessed against the plaintiff.

---

3. See Thibodeaux v. Pacific Mutual Life Insurance Company, 237 La. 722, 112 So.2d 423, 75 A.L.R.2d 1228; Finley v. Hardware Mutual Insurance Company, 237 La. 214, 110 So.2d 583; and Vidrine v. American Employers Insurance Company, La.App., 129 So.2d 288.