Glenn STAFFORD, Appellant,

v.

WESTCHESTER FIRE INSURANCE COM-
PANY OF NEW YORK, INC.,
Appellee.

WESTCHESTER FIRE INSURANCE COM-
PANY OF NEW YORK, INC.,
Cross-Appellant,

v.

Glenn STAFFORD, Cross-Appellee.
No. 2030.

Supreme Court of Alaska.

Sept. 13, 1974.

Sandra K. Saville, Kay, Miller, Libbey, Kelly, Christie & Fuld, Anchorage, for appellant and cross-appellee.

Sanford M. Gibbs, Hagans, Smith & Brown, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, and FITZGERALD, Justices.

## OPINION

RABINOWITZ, Chief Justice.

This appeal raises questions of whether an injured employee must reimburse his employer's workmen's compensation carrier for all benefits received upon obtaining a settlement from a third-party tort-feasor, and whether, under the exclusive remedy provisions of Alaska's Workmen's Compensation Act, an employee is barred from suing his employer's compensation carrier for intentional torts.

On May 2, 1970, Stafford sustained serious injuries while attempting to shut off a shredder, which had been manufactured and distributed by W. W. Grinder Corporation and Alaska Greenhouses, Inc. At the time of the injury, Stafford was acting in the course and scope of his employment for G. B. Bordewick Co., Anchorage, Alaska, which was insured by Westchester.

On June 2, 1971, Stafford commenced an action against W. W. Grinder and Alaska Greenhouses, Inc., alleging that while operating the shredder he had suffered substantial injuries by virtue of its defects. Westchester filed a complaint in intervention in this case on September 14, 1971. Westchester alleged that it was the workmen's compensation carrier for Bordewick, and in such capacity had paid a substantial amount of compensation to Stafford for injuries sustained while using the shredder.[1] Westchester demanded judg-

---

1. The compensation payments by Westchester were made following the May 2 accident.

Stafford then made application to the Alaska Workmen's Compensation Board for adjust-

ment against the parties for the amount of compensation paid pursuant to AS 23.30.-015.

On March 12, 1972, Stafford settled his suit against W. W. Grinder and Alaska Greenhouses, Inc. for the sum of $137,500. On March 15, 1973, Stafford filed an answer and counterclaim to Westchester's complaint for intervention. In this answer, Stafford challenged Westchester's right to reimbursement. He further alleged that Westchester, through its agents, did wilfully, deliberately, and maliciously withhold Workmen's Compensation Act benefits in an effort to discourage Stafford from proceeding and securing compensation under the act. Stafford contended that this tortious conduct by Westchester precluded it from receiving any reimbursement of compensation payments from Stafford's settlement with the third-party tort-feasor, and entitled him to substantial damages for conscious infliction of mental injury. Stafford further asserted that Westchester's malicious actions and the resulting injury should also be considered as constituting a defense of recoupment to Westchester's claim in intervention for reimbursement.

In preparation for trial, Stafford noticed the deposition of Charles Hagans, attorney for the Bordewick Co. and Westchester, for March 30, 1973. Westchester then filed a motion for a protective order against the taking of Hagans' deposition based primarily on the attorney-client privilege. The superior court denied Westchester's motion on the basis that Westchester had waived the attorney-client privilege.[2] Thereafter, Westchester filed a motion for summary judgment, which was granted by the superior court. The court found a workmen's compensation carrier was entitled to complete reimbursement for compensation paid by it to the injured em-

ployee out of any damages recovered by the employee against a third-party tort-feasor. The trial court concluded that this reimbursement should be without deduction for attorney's fees and costs incurred by the employee in obtaining the judgment or effecting settlement with the third-party tort-feasor. The court also held that the exclusive remedy for delay in making compensation payments, for whatever reasons, is found in the provisions of AS 23.30.155 of the Alaska Workmen's Compensation Act. Implicit in this conclusion is the superior court's determination that an injured employee is legally unable to assert a claim against the employer's carrier for intentional infliction of mental distress or to interpose the defense of recoupment based on a purposeful delay in making compensation payments. Westchester was awarded $10,340.42, the uncontroverted amount of compensation payments and medical benefits it paid to Stafford, but was not awarded any attorney's fees. Stafford appeals from the order granting summary judgment, and Westchester cross-appeals from the superior court's denial of attorney's fees.

Stafford's first contention on appeal is that the superior court erred in limiting the testimony that Stafford proposed to elicit from Westchester's attorney, Charles Hagans, in a prospective deposition. We find no evidence in the record to support this assertion. After denying Westchester's motion for a protective order, the superior court stated it might sustain an objection, if areas of confidentiality not previously waived were the subject of questioning at the time of Hagans' deposition. However, the court repeatedly stated, "I'm not prohibiting anything at this time, because I do not know what the line of testimony is going to take." We hold, therefore, that there was no error as

ment of his claim, and the Board awarded increased compensation and medical benefits. The total amount of payments made to Stafford was $10,340.42.

2. The superior court holding that a waiver of the privilege had occurred was based upon

the disclosure of a Westchester claims representative of letters between her and Mr. Hagans regarding Stafford's claim for his injuries.

the court's remarks did not constitute a limitation upon Stafford's examination of Westchester's counsel. Further, we note that Hagans' deposition was never taken by Stafford.

■ Stafford next argues that the superior court erred in awarding Westchester complete reimbursement for benefits paid, and further, if reimbursement was appropriate, Westchester should have been required to pay to Stafford a pro rata share of his costs or expenses in obtaining a settlement from the third-party tort-feasor. It is provided in AS 23.30.015(g) of our compensation act that:

> If the employee or his representative recovers damages from the third person, the employee or representative shall promptly pay to the employer *the total amounts paid by the employer* under (e)(1)(A), (B), and (C) of this section, *insofar as the recovery is sufficient after deducting all litigation costs and expenses.* Any excess recovery by the employee or representative shall be credited against any amount payable by the employer thereafter. (emphasis added)

Stafford asserts first that a compromise settlement does not involve "recovery of damages" within the ambit of AS 23.30.015(g). Second, he contends that if Westchester is held to be entitled to reimbursement, it should bear a share of the expenses he incurred in effecting the settlement.

We find the first portion of Stafford's argument untenable. One of the dominant themes of Alaska's Workmen's Compensation Act is the avoidance of double recovery, which theme is reflected in the requirement of AS 23.30.015(g) that the total amounts paid by the compensation carrier be returned to it when damages are recovered by the employee from a third person. Professor Larson, in discussing this theme which is commonly found in compensation acts, states that the

> claimant should not be allowed to keep the entire amount both of his compensation award and of his common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and to give the employee the excess.[3]

This principle applies equally when a suit is settled as when a final judgment is rendered. The federal Longshoremen's and Harbor Workers' Compensation Act[4] has been found to dictate such a result. Ashcraft and Gerel v. Liberty Mutual Insurance Co., 120 U.S.App.D.C. 51, 343 F.2d 333 (1965); Davis v. United States Lines Co., 253 F.2d 262 (3d Cir. 1958).[5] We are not persuaded that Stafford's construction of the term "recovery", as used in AS 23.30.150(g), should be adopted.

Stafford argues alternatively that it would be just and equitable in the instant case to place the burden of attorney's fees and costs in effecting his settlement with the third-party tort-feasor either entirely or partially on Westchester, if Westchester is to share in the compromise settlement. Stafford cites Strachan Shipping Co. v. Melvin[6] and Chouest v. A & P Boat Rentals, Inc.[7] in support of this argument. However, these cases are distinguishable as both involved situations in which the amount recovered by the injured employee against the third person was not sufficient both to pay the attorney's fees and to reimburse completely the carrier for its compensation payments. The Fifth Circuit concluded that in such a situation, the worker should be awarded sufficient funds to pay his attorney's fees from the amount

---

3. 2 A. Larson, Workmen's Compensation § 71.20, at 166–67 (1974) (footnote omitted).

4. 33 U.S.C.A. § 901 et seq. The Alaska Workmen's Compensation Act substantially follows the federal act. Barber v. New England Fish Co., 510 P.2d 806, 812 (Alaska 1973).

5. *Accord,* Richard v. Arsenault, 349 Mass. 521, 209 N.E.2d 334 (1965); Brown v. Arapahoe Drilling Co., 70 N.M. 99, 370 P.2d 816 (1962).

6. 327 F.2d 83 (5th Cir. 1964).

7. 472 F.2d 1026 (5th Cir. 1973).

recovered, and the remainder should then be paid to the carrier. The court noted in *Chouest* that:

> [T]he question of reallocation will never even arise in the majority of cases, where the amount of recovery is sufficient both to reimburse the intervenor and pay the plaintiff's attorney.[8]

In Davis v. United States Lines Co., 253 F.2d 262 (3d Cir. 1958), the Third Circuit held that litigation costs should come out of the recovery against the third-party tort-feasor. In the *Davis* court's view, this result should be reached whether the employee or the employer brings the third-party suit. In Ashcraft and Gerel v. Liberty Mutual Insurance Co., 120 U.S.App. D.C. 51, 343 F.2d 333 (D.C.Cir. 1965), Judge McGowan noted that the change in the federal workmen's compensation statute[9] that allowed the employee to sue, should not result in the employee obtaining a greater recovery than if the employer brought the suit. The line of cases from the Fifth Circuit was differentiated by *Davis* and *Ashcraft* as involving insufficient funds to reimburse all parties completely.

█ Turning to the language of AS 23.-30.015(g) of Alaska's Workmen's Compensation Act, it states that there will be total reimbursement after litigation costs are deducted.[10] In contrast to this statute, there are special statutes in some states,[11] which specifically provide that the injured employee and the employer/carrier shall prorate court costs and attorney's fees in proportion to the amounts that are received from the third-party claims.[12] We hold, however, that the provisions of AS 23.30-015(g), requiring that the employer be promptly paid the total amounts that were paid by him in benefits at such time that damages are recovered,[13] lead to the conclusion that it was intended there should be no pro rate deduction. We therefore affirm the superior court's ruling on this issue.

█ Stafford's principal specification of error is that the superior court erred in dismissing his counterclaim against Westchester for intentional tortious conduct. The superior court dismissed Stafford's counterclaim on the ground that AS 23.30.-155 provides the exclusive remedy for such conduct on the carrier's part. In regard to this issue, AS 23.30.155 of Alaska's Workmen's Compensation Act provides:

> (a) Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled to it, without an award, except where liability to pay compensation is controverted by the employer.
>
> .    .    .    .    .    .
>
> (e) If any installment of compensation payable without an award is not paid within 14 days after it becomes due, as provided in (b) of this section, *there shall be added to the unpaid installment*

---

8. *Id.* at 1037.

9. The federal statute was changed to allow the employees to bring suit directly, but was silent as to deducting fees and costs when the employee does bring the suit.

10. *See* 2 A. Larson, Workmen's Compensation § 74.32, at 226.118 (1974), where he states the general rule to be:
> If the sum recovered by the employee is more than enough to pay attorney's fees and reimburse the carrier, the carrier is reimbursed in full, and, apart from special statutes on sharing attorney's fees, is not required to share the legal expenses involved in obtaining the recovery.

11. *See* McCally v. Hartford Acc. & Indem. Co., 247 F.Supp. 444 (D.D.C.1965); Horsey v. Stone & Webster Eng'r Corp., 162 F. Supp. 649 (W.D.Mich.1958); Dockendorf v. Lakie, 251 Minn. 143, 86 N.W.2d 728 (1957).
Although we might agree with our concurring colleagues as to the desirability of proration, we are of the belief that decision of this question is committed to the legislature and must await resolution in that forum.

12. There is a line of Kentucky cases that allows pro rata deduction of fees. However, the Kentucky statute differs from Alaska's in that it is silent as to total reimbursement or deduction of expenses. *See* Security Ins. Co. v. Norris, 439 S.W.2d 68 (Ky.App. 1969); Stacy v. Noble, 361 S.W.2d 285 (Ky. App.1962).

13. See text of AS 23.30.015(g) *supra*.

*an amount equal to 20 per cent of it, which shall be paid at the same time as, and in addition to, the installment, unless notice is filed under (d) of this section or unless the nonpayment is excused by the board after a showing by the employer that owing to conditions over which he had no control the installment could not be paid within the period prescribed for the payment.* (emphasis added)

Penalty provisions are provided for in some states as a deterrent against delays in compensation payments.[14] Generally, in deciding whether or not a penalty should be imposed, the issue of good faith arises. In circumstances where there is reliance by the insurer on responsible medical opinion or conflicting medical testimony, invocation of penalty provisions is improper.[15] However, when nonpayment results from bad faith reliance on counsel's advice,[16] or mistake of law,[17] the penalty is imposed. The cases do not discuss the assessment of penalties in terms of negligent versus intentional misconduct, but it appears that in either case the injured employee should be entitled to imposition of the statutory penalty, if bad faith is shown.[18]

AS 23.30.155 does not draw a distinction between wilful and negligent failure to make compensation payments, and thus either type of failure should come within its ambit. Stafford could, therefore, recover for wilful and intentional misconduct by Westchester in failing to make payments, pursuant to the penalty provided for in AS 23.30.155.[19]

We turn next to the question of whether the penalty provision of AS 23.-30.155 is the sole remedy available to Stafford for Westchester's alleged improper conduct. The exclusive liability provision of Alaska's Workmen's Compensation Act (AS 23.30.055) provides in part:

The liability of an employer prescribed in § 45 of this chapter is exclusive and in place of all other liability of the employer and any fellow employee to the employee . . . .[20]

The definition of who shall be classified as an employer is set out in AS 23.30.-265(12) as being

. . . the state or its political subdivision or a person employing one or more persons in connection with a business or industry coming within the scope of this chapter and carried on in this state.[21]

Under our compensation act the carrier is considered a separate entity from the employer. Stafford recognizes that the principle of subrogation may be utilized to conclude that the carrier derives immunity from the exclusive remedy provisions in a damage action brought by the employee. However, Stafford argues that this immunity should not extend to intentional torts. This is supported by the decision of the Supreme Court of California in Unruh v. Truck Insurance Exchange,[22] in which suit for an intentional tort by an injured employee against her employer's compensation carrier was allowed.

In *Unruh*, the California Supreme Court reasoned that while the insurer obtained

14. *See* 3 A. Larson, Workmen's Compensation, Appendix A, Table 4, at 517 (1973).

15. LaFavor v. Aetna Cas. & Sur. Co., 117 Ga.App. 873, 162 S.E.2d 311 (Ga.App. 1968); Tullier v. Ocean Acc. & Guar. Corp., 243 La. 921, 148 So.2d 601 (1963), wherein the court stated that the penalty should only be imposed if failure to pay was arbitrary, capricious and without probable cause.

16. Darby v. Johnson, 118 So.2d 707 (La.Ct. App.1960).

17. Boden v. City of Hialeah, 132 So.2d 160 (Fla.1961); Shuff v. Liberty Mut. Ins. Co., 134 So.2d 707 (La.Ct.App.1961).

18. *See* 3 A. Larson, Workmen's Compensation § 83.40 (1970).

19. In hearings before the Board, Stafford did not request that such penalties be imposed.

20. AS 23.30.045 sets out the scope of the employer's liability and his responsibility to be insured, or a self-insurer.

21. A carrier is defined separately under AS 23.30.265(3) as a person authorized to insure under this chapter.

22. 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P. 2d 1063 (1972).

immunity by being the alter ego of the employer, such immunity was lost when the insurer exceeded its proper role. In committing intentional torts, the insurer was outside the role of a carrier, and became a "person other than the employer", against whom the employee is entitled to bring a civil action for damages.[23] Double recovery is prevented by requiring reimbursement for any compensation that was received prior to obtaining judgment against the tort-feasor. The *Unruh* court held it would not allow recovery for negligent acts by the insurer [24] believing that the system of workmen's compensation would be subjected to a process of partial disintegration as a result. Nevertheless, it found that permitting suits for intentional torts would subserve the laudable objectives of the compensation scheme, while encouraging the insurer to fulfill its proper role in that scheme.[25]

Stafford also cites the case of Flamm v. Bethlehem Steel Co.,[26] concerning a claim for compensation made under the Longshoremen's and Harbor Workers' Compensation Act. The employer of the injured longshoreman conspired with a physician to deprive the employee of his right to compensation by the submission of a fraudulent medical report. The longshoreman brought an action to recover damages based on the conspiracy. The court in permitting the damages action noted that since the wilfully inflicted injury was not "accidental", the injured longshoreman would not be entitled to compensation under the

statute. The court then noted that the compensation law is exclusive only where in fact it provides a remedy.

Westchester argues that the penalty provisions of AS 23.30.155 for delay in payment of compensation constitute the exclusive remedy, and allowing suits under the guise of intentional torts should not be permitted. This approach was adopted in Ragsdale v. Watson,[27] wherein the injured employee brought suit for fraud against the doctors who had treated him, alleging they had submitted fraudulent reports as to his condition. The court found that if the statements submitted were untrue, the employee should have attacked the testimony in the proceeding before the commission or on appeal to the court. Having failed to do this, the employee could receive no relief, and his civil suit was dismissed.[28]

We believe that AS 23.30.155 was envisioned by Alaska's legislature to cover situations where the employer or carrier negligently, or wilfully, failed to make timely compensation payments, but that this section was not intended to operate as the exclusive remedy for all intentional wrongdoings. In so holding we adopt the reasoning of *Unruh*. In circumstances where there is tortious conduct that goes beyond the bounds of untimely payments, the immunity from suit provided by the Workmen's Compensation Act is lost.[29] Normally the carrier must investigate claims in order that the compensation scheme of payments for actual injuries will

23. *Id.*, 102 Cal.Rptr. at 829, 498 P.2d at 1077.

24. *See* Redner v. Workmen's Comp. Appeals Bd., 5 Cal.3d 83, 95 Cal.Rptr. 447, 455, 485 P.2d 799, 807 (1971), wherein the court would not permit the suit for negligent actions, but indicated that intentional torts would give rise to common law suit.

25. 102 Cal.Rptr. at 825, 498 P.2d at 1073.

26. 18 Misc.2d 154, 185 N.Y.S.2d 136 (Sup. Ct.1959), aff'd, 10 A.D.2d 881, 202 N.Y.S.2d 222 (App.Div.1960).

27. 201 F.Supp. 495 (W.D.Ark.1962).

28. *Accord*, Cain v. Employers Cas. Co., 96 So.2d 527, 531–534 (La.Ct.App.1957), aff'd,

236 La. 1085, 110 So.2d 108 (1959); Greenwalt v. Goodyear Tire & Rubber Co., 164 Ohio St. 1, 128 N.E.2d 116, 120 (1955).

29. In suits for other intentional torts committed by the employer, recovery is permitted on the theory that the harm is not accidental and therefore not covered by the act. A stiff burden is placed on the employee to demonstrate intent to harm by the employer, or in some cases by his agents. Roberts v. Barclay, 369 P.2d 808 (Okl.1962); Heskett v. Fisher Laundry & Cleaners Co., 217 Ark. 350, 230 S.W.2d 28 (1950). *See* 2 A. Larson, Workmen's Compensation § 68.13, at 157 (1974).

be properly administered. However, intentional torts committed in connection with the investigation of claims and payment thereof are not to be protected. Stafford has alleged that Westchester did more than delay in making benefit payments; he has asserted that it intentionally and maliciously misled him about his right to compensation and discouraged him from exercising his rights, resulting in emotional injury. We conclude that Stafford is not precluded, by virtue of AS 23.30.155, from a trial on the merits of his claims. The superior court's order granting summary judgment to Westchester is reversed, and the matter is remanded for trial as to Stafford's claims against Westchester.

■ Westchester's cross-appeal involves the superior court's refusal to award it any attorney's fees, pursuant to Civil Rule 82(a). We find that the court erred in its determination, based on an incorrect interpretation of our decision in Malvo v. J. C. Penney, Inc., 512 P.2d 575 (Alaska 1973). In *Malvo*, we held that to award full compensation for attorney's fees to J. C. Penney, Inc. was unjustified where there was "no indication from the record that Malvo did not have a good faith claim . . . ."[30] We stated that:

The purpose of Civil Rule 82 is to partially compensate a prevailing party for the costs and fees incurred where such compensation is justified and not to penalize a party for litigating a good faith claim.[31]

The superior court interpreted *Malvo* to require that no attorney's fees should be awarded when the losing party brought the action in good faith. We did not intend that attorney's fees should be denied to the prevailing party, but rather, that the schedule of Civil Rule 82(a) providing for partial compensation should be followed.

On remand, the attorney's fee award must be recomputed as Westchester prevailed on the reimbursement issue, but Stafford prevailed on the exclusive remedy issue. The superior court shall determine whether Westchester or Stafford can be considered a prevailing party. Then, if it can be concluded that either party has prevailed, the attorney's fees should be awarded in accordance with Civil Rule 82(a).

Affirmed in part, reversed in part, and remanded.

BOOCHEVER, J., not participating.

ERWIN, Justice, with whom CONNOR, Justice, joins (concurring in part, dissenting in part).

While I specifically concur with the result reached in this case, I do not agree with the conclusion that an employer's compensation carrier does not have to pay its pro rata share of the legal costs incurred by an employee in obtaining a recovery from a third-party tort-feasor. I read AS 23.30.015(g)[1] to permit an injured employee to deduct the compensation carrier's pro rata share of the litigation costs and attorneys' fees from the sum which the employee is required to reimburse the carrier. Any other reading of this statutory provision permits unjust enrichment of the carrier at the expense of the injured workman. My view is bolstered by the legislative history of the provision.

The Alaska Workmen's Compensation Act was patterned after the federal Longshoremen's and Harborworkers' Compensation Act. It has been the state's policy to update the Alaska act to parallel changes

---

30. 512 P.2d at 588.

31. *Id.*

1. AS 23.30.015(g) provides in part:
If the employee or his representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A), (B) and (C) of this section, insofar as the recovery is sufficient after deducting all litigation costs and expenses . . . .

in the federal act. This makes available a substantial body of case law for use in administering our statute.[2]

The Longshoremen's and Harborworkers' Act does not specifically address itself to the question whether legal costs must be shared when the employer's compensation carrier is reimbursed out of a recovery obtained by the employee from the third-party tort-feasor.[3] But, in interpreting the federal act, most federal courts and the leading commentator in the field of workmen's compensation, Professor Larson, take the position that:

> If the sum recovered by the employee is more than enough to pay attorney's fees and reimburse the [employer's] carrier, the carrier is reimbursed in full, and, apart from special statutes on sharing attorney's fees, is not required to share the legal expenses involved in obtaining the recovery.[4]

When the employee's recovery is insufficient to both cover his legal costs and fully reimburse the employer's carrier, however, the carrier is reimbursed out of the recovery only to the extent possible after the recovery has been diminished by the employee's legal expenses.[5] Thus, the prevailing view under the federal act is that when the recovery is insufficient to both cover the employee's legal expenses and fully reimburse the employer's carrier, the carrier is, in effect, forced to share in the employee's legal expenses to the extent that the recovery is insufficient to fully reimburse it. But when the recovery is sufficient, the carrier is not required to share the employee's legal expenses.

In 1965, House Bill 176 was submitted to the Alaska Legislature by Acting Governor Hugh J. Wade to bring the Alaska Workmen's Compensation Act into line with the federal Longshoremen's and Harborworkers' Compensation Act. In his letter accompanying the bill, Acting Governor Wade stated:

> Pursuant to State law and the Uniform Rules of the Legislature, I am submitting a bill to repeal and reenact AS 23.-30.015. This proposed legislation brings the Alaska Workmen's Compensation Act up to date with parallel Federal Law, 33 U.S.C.A. 933, the Harborworkers' and Longshoremen's Compensation Act [sic].[6]

However, a committee substitute bill introduced by the House Judiciary Committee was enacted by the legislature in lieu of House Bill 176. This substitute bill contained an entirely new section g—now AS 23.30.015(g)—which was not in the federal act:

> If the employee or his representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A), (B) and (C) of this section, insofar as the recovery is sufficient after deducting all litigation costs and expenses. . . .[7]

---

2. For example, in 1965 Acting Governor Hugh J. Wade stated in a letter to the legislature:

   It is desirable to keep our law as similar to the Federal law as possible, both because it is the model for the entire Alaska Workmen's Compensation Act, and because a substantial body of case law under the revised Federal Act has already been built up for us to rely on in administering a new AS 23.30.015 in Alaska.

   1965 Journal of the Alaska House of Representatives, Supp. 13, at 242–1.

3. Chouest v. A & P Boat Rentals, Inc., 472 F.2d 1026, 1030 (5th Cir.), cert. denied, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973).

4. 2 A. Larson, Workmen's Compensation Law § 74.32, at 226.118 (1974) (footnote omitted). See, e. g., Ashcraft and Gerel v. Liberty Mutual Ins. Co., 120 U.S.App.D.C. 51, 343 F.2d 333 (1965).

5. See Strachan Shipping Co. v. Melvin, 327 F.2d 83 (5th Cir. 1964); 2 A. Larson, Workmen's Compensation Law § 74.32, at 226.119 (1974).

6. 1965 Journal of the Alaska House of Representatives, Supp. 13, at 242–1.

7. 1965 SLA, ch. 73, at 45.

It is thus clear that the committee which introduced the substitute bill and, presumably, the legislature knew that they were changing the law from that prevailing under the Longshoremen's and Harborworkers' Act. But it is unclear from the legislative history whether they were merely codifying the prevailing federal · view or were attempting to change it.

It is conceded that it is possible to read AS 23.30.015(g) to support the federal view, for the statute, when literally read, stipulates that the employee is required to reimburse the employer's carrier only to the extent that the recovery is sufficient to do so after "deducting all litigation costs and expenses." However, I do not believe this literal reading to be consistent with the legislative intent. If the legislature had wished to follow the federal interpretation, there would be no need to codify it. They could have safely relied upon federal case law, as they have done to elaborate upon and define other sections of the Alaska Workmen's Compensation Act. It thus appears that if the addition of AS 23.30-015(g) is to be accorded a meaningful justification, it must be construed to reject the federal view on · sharing legal fees. However, since nothing more can be logically deduced from the legislative history of this provision, it remains to be decided whether it requires the sharing of legal expenses. In my view it does, for if any other reading is given to the provision the carrier is unjustly enriched at the injured employee's expense.

I can perceive of no legislative goal for permitting an employer's compensation carrier to secure a windfall profit at the employee's expense. Compensation premiums are based on actuarial estimates of the number of accidents of each type in a given industry. They are not usually computed with any possible recovery from third-party sources in mind, because the mathematical probability of such a recovery is difficult to determine. And even when they are, the amount of estimated recovery must, of necessity, be conservative. Thus, when the carrier recovers from a third-party tort-feasor because of the employee's suit, the recovery is in the nature of an unexpected return, for the premium paid by the employer is normally based upon a projected injury loss without regard to possible third-party claims.

If an employer or compensation carrier need not pay his pro rata share to recover this unanticipated return, the entire burden of the litigation must be borne by the employee, and the carrier takes the benefit of both the employer's premium and the employee's litigation effort without a corresponding detriment. In my opinion, this is in the nature of an unjust enrichment.[8] In order to insure that the employer's compensation carrier is not unjustly enriched at the expense of the employee, I would read AS 23.15.030(g) to require the proration of litigation costs and attorneys' fees between the carrier and the employee on the basis of the ratio of the total compensation payments to the total recovery.[9]

8. *See* Security Ins. Co. of Hartford v. Norris, 439 S.W.2d 68, 70 (Ky.1969) ; Charles Seligman Distrib. Co. v. Brown, 360 S.W.2d 509, 510–511 (Ky.1962). *See also* Metz v. Fireman's Fund Ins. Co., 15 Md.App. 179, 289 A.2d 830 (1972) ; Banoski v. Motor Crane Service, Inc., 35 Mich.App. 487, 192 N.W.2d 555 (1971) ; Caruso v. Jackson Transp. Corp., 15 A.D.2d 59, 222 N.Y.S.2d 298 (1961). Compare the analogous situation of recovery by an insured where there is a subrogated interest. United Services Auto. Ass'n v. Hills, 172 Neb. 128, 109 N.W.2d 174, 177–178 (1961).

In the cases which hold that the subrogated property insurer is obligated to pay a fee to the insured's attorney, who recovered damages from a third party, the courts generally rely on general equitable principles, and, in some cases, point out that the insurer did not participate in the action against the third party.
Anno., 2 A.L.R.3d 1441, 1443 (1965).

9. Nothing said herein is intended to imply that a sharing of legal costs is required when the employer seeks recovery against the third-party tort-feasor.