CULPEPPER, Judge.
This is a workmen’s compensation case. From an adverse judgment on the merits defendants appealed. Plaintiff answered the appeal, seeking penalties and attorney’s fees.
The issues are factual. Defendants’ first contention is that no accident was proved. This argument has no merit. Plaintiff testified that on January 22, 1959, while employed as a seamstress for defendant cleaning establishment, she was leaning forward when a wooden shirt form, on a metal stand, was knocked over by a co-employee, striking plaintiff on the back. Although no one else actually saw the accident, defendants’ own witness, Myrtle Compton, testified that she came up and saw plaintiff sitting down on a box, complaining that the shirt form had fallen and hit her on the back. On instructions from their boss, Myrtle Compton took plaintiff to a doctor who sent her to the hospital where she remained for several weeks and thereafter continued under a doctor’s care for several months. As will be shown hereinafter, these doctors, particularly Dr. Banks, were of the opinion plaintiff had *432 suffered an injury to her back on about the date of the accident. Previous to the time of the accident she had been working as a seamstress, but after that time, she did not work. We think plaintiff has proved an accident in the course of her employment. The rule is now well established in this state that the testimony of plaintiff alone may be sufficient to establish an accident in a workmen’s compensation case, if there is nothing to discredit his account thereof and his statements are corroborated by surrounding circumstances. See Gray v. Southern Farm Bureau Casualty Ins. Co., La.App., 134 So.2d 588 and the cases cited therein.
The next issue is whether plaintiff was still disabled as a result of the accident, after workmen’s compensation payments were stopped on September 25, 1959. A preponderance of the medical testimony shows that by that time plaintiff had sufficiently recovered from her physical injuries to return to the relatively light duties of a seamstress. She could not have done heavy work, even before the accident, because of pre-existing back troubles. The issue is whether plaintiff has proved continued disability as a result of what is commonly called “traumatic neurosis.”
Defendant introduced evidence of plaintiff’s medical history which shows many instances of hospitalization and treatment for varied complaints, some real and some apparently exaggerated. At an early age plaintiff underwent an appendectomy following which the incision reopened three times and had to be repaired. After her marriage, plaintiff suffered several threatened abortions and occasions of false labor. She had trouble after a tonsillectomy in 1945. Then followed a period of complaints and treatment for nervousness, depression and anxiety. In 1949 she underwent a partial thyroidectomy. In 1952 her right foot was cut by a lawnmower causing a compound fracture of the bones. She was tested for ulcers, gallbladder trouble, heart trouble, and pain in the upper chest. In 1956 a herniated disc at L4-L5 was surgically removed and the vertebrae fused. In 1957 she went to work for the Charity Hospital where she remained for about a year. She had been working for French Unique Cleaners about three months when the accident occurred. Plaintiff is a 40 year old white woman who weighs only about 105 pounds.
From this medical history defendant argues that plaintiff has been a “psycho-neurotic for the past 20 years” and that any neurotic condition from which she is now suffering has no causal relation to the accident. We cannot agree with this argument. Despite defendant’s contention to the contrary, we interpret the testimony of Dr. Davidson H. Texada, the only psychiatrist who appeared as a witness, as stating positively that the physical injuries received by plaintiff in this accident and the prolonged and dramatic treatment which she received for these injuries, that is, a body cast and traction for three weeks, were definitely aggravating factors causally related to her present neurotic disability. Dr. Texada’s opinion is strongly corroborated by the other doctors who, though not experts in the field of psychiatry, expressed the opinion that plaintiff was not malingering. They could not find sufficient orthopedic or neurological basis for her prolonged complaints and thought that she should be examined and treated by a psychiatrist for possible functional disorders. Also strongly corroborating Dr. Texada’s diagnosis is the fact that plaintiff had worked in a hospital and as a seamstress until the time of the accident, but had not worked since. The lay testimony is generally to the effect that before the accident plaintiff was able to do her own housework, work in her garden, keep up with her job at the Charity Hospital and as a seamstress, but that since the accident she was not able to engage in these activities and that she constantly complains of pain.
The testimony of only one qualified psychiatrist is sufficient to prove “traumatic neurosis” if his opinion is not discredited *433 and is supported by corroborating evidence. See Deboest v. Travelers Insurance Co., 138 So.2d 646 (3rd Cir.App.1962) and the cases cited therein.
Although the issue of penalties and attorney’s fees is not without difficulty, we have decided that since there was expert medical testimony, stating plaintiff had recovered from her physical injuries and only one psychiatrist testified as to the psychoneurotic disability, defendant was not arbitrary or capricious in refusing to continue weekly compensation payments.
For the reasons assigned the judgment appeal is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.
HOOD, J., dissents, being of the opinion that there is no causal relationship between the accident and any disability which plaintiff may have had at the time compensation payments were discontinued.
On Application for Rehearing.
En Banc. Rehearing denied.