SAMUEL, Judge.
This is a suit for workmen’s compensation benefits for total and permanent disability resulting from a heart attack. Defendant filed a plea of prescription and answered, alternatively denying liability. There was judgment in the district court awarding plaintiff $35.00 per week beginning June 29, 1959, for the duration of his disability not to exceed 400 weeks (total and permanent disability benefits), with interest at 5% per annum on each past due installment from its due date until paid, 12% penalties on the amount of the award plus penalty attorney fees in the amount of $2,000.00, an expert’s fee and costs. Defendant has appealed re-urging its plea of prescription before this court and alternatively seeking a reversal on the merits. *293 Further in the alternative, defendant seeks allowance of a credit for payments made over a period of 14 weeks and a reversal of that portion of the trial judgment which assesses penalties.
THE PLEA OF PRESCRIPTION
Plaintiff suffered the heart attack on June 29, 1959. At that time his wages were $78.00 per week and during the 14 weeks immediately following the attack defendant paid him the total amount of $476.52 in twelve unequal payments. The last of these payments was made on October 5, 1959 and this suit was filed on September 8, 1960. Plaintiff contends the payments were wages in lieu of compensation and therefore interrupt the running of the prescriptive period of one year after the accident during which, in the absence of an agreement between the parties upon the payments to be made, a suit in workmen’s compensation must be filed (LSA-R.S. 23:1209). Defendant contends they were made simply as a gift or benevolence and do not interrupt prescription.
All of the payments under discussion were made by check and no explanation of their purpose was ever given to plaintiff. Dr. Nadler, the treating physician, did tell him that his injury was not compensable. But plaintiff did not work at all while he was receiving the payments; he was completely incapacitated either in a hospital or at home during most of that time. When Dr. Nadler informed him that he could return to light work defendant refused to give him such work and discontinued the payments.
Since plaintiff performed no work at all in return therefor, there can be no question but that the payments made after his heart attack were not wages earned by him either in whole or in part. Under these circumstances the payments must be considered as wages in lieu, or the equivalent, of compensation. As such, they interrupt prescription.
It is self evident that prescription cannot run against a cause of action which has not accrued or while that cause of action cannot be exercised. Guderian v. Sterling Sugar & Ry. Co., 151 La. 59, 91 So. 546; South Arkansas Lumber Co. v. Tremont Lumber Co., 146 La. 61, 83 So. 378; Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582. Here plaintiff could not bring his action for compensation while he was receiving those payments which were above $35.00 each and there were only two of the twelve payments made which were below that figure ; during that time the action would have been premature; and prescription of the right to sue for compensation therefore is interrupted as long as compensation eo nomine or by disguise is being paid. Scalise v. Liberty Mutual Insurance Company, La. App., 84 So.2d 88; Barnes v. Ed. Taussig, Inc., La.App., 78 So.2d 418; Abshire v. Cities Service Refining Corp., La.App., 50 So.2d 307; Goodman v. Hillyer, Deutsch, Edwards, Inc., La.App., 49 So.2d 60.
The rule was expressed by the Supreme Court in D’Antoni v. Employers’ Liability Assur. Corporation, 213 La. 67, 76, 34 So.2d 378, 381, as follows:
“If the employee is actually earning the wages paid him, his suit cannot be dismissed on a plea of prematurity for-asmuch as he is not receiving compensation. * * * Conversely, if it is shown on the trial of the plea that the wages being paid the employee are in reality a gratuity and not for the performance of work, then the action will be dismissed as premature — for, in such instance, the payment of the wage is the equivalent to the payment .of compensation.”
The pertinent statute (LSA-R.S. 23:-1209) provides that the one year prescription shall not take effect until the expiration of one year from the time of making the last payment. In the instant case the second to last payment and those two immediately preceeding it, all three of which were in the amount of $39.00 each, were made on Sep *294 tember 28, 21 and 14, 1959, respectively, and the last payment, made on October 5, 1959, was less than $35.00. It is not necessary for us to consider the effect on prescription of the last payment less than the compensation to which plaintiff was -entitled. For it is quite clear that, this suit having been filed on September 8, 1960 and all of the three $39.00 payments having been made subsequent to September 8, 1959, each one of those three payments interrupted the running of prescription and plaintiff’s action could not prescribe until the expiration of one year from the time of making the last such payment. The plea of prescription is not well founded and the same is rejected and dismissed.
THE MERITS
•Plaintiff spoke only broken English, appears to have been uninformed and largely uneducated, and had considerable difficulty in understanding and answering questions asked of him at the trial. Sixty-two years o‘f age at the time the heart attack occurred, he had worked for the defendant steadily since 1942. While so working as a longshoreman he was severely injured in 1951 when he sustained a fractured skull, a broken collar bone and nine broken ribs. He never again worked as a longshoreman but after five months disability the defendant gave him what he termed was a “lifetime job” doing lighter work entirely on shore and principally in the gear yard. He received no compensation settlement or damages for the 1951 accident, one of the residuals of which was an impairment in his speech.
Defendant contends that there was no causal connection between the heart attack suffered by the plaintiff and the work being performed by him at the time the attack occurred, “light work” as referred to by the witnesses, and therefore there was no com-pensable accident under the provisions of the Workmen’s Compensation Act.
Although there is some conflict in the testimony relative to the work performed by plaintiff on the day of the attack, the record clearly preponderates to the following effect: He reported for work at 7 a. m. At 8 a. m., with August Rodriguez, a fellow workman, he started loading gear on a trailer truck for the purpose of transporting the same across the river. The gear consisted of eight small flat wagons, two small tractors and a lift machine. In order to get this heavy equipment on the trailer it was necessary to place two metal skids, weighing 330 pounds each, at the rear of the vehicle so as to form a ramp. The skids were physically handled by the two men in order to get them into place and then to put them back aboard the trailer. The load was lashed down with heavy chain and small cross ties or blocks were placed between the wagons. After the load had been lashed down the two men, with Rodriguez driving, rode across the Mississippi River Bridge and assisted in unloading the equipment. The plaintiff helped to remove the heavy metal skids from the trailer bed and again fastened them to the rear of the vehicle to form a ramp. He pulled off the lashing chains and stacked them in front of the trailer and picked up the cross ties separating the wagons and stacked them. While returning from the unloading operation plaintiff experienced a pain in his chest and arm. He said nothing to Rodriguez and was so unusually quiet that the latter asked him if anything was the matter. Rodriguez testified that plaintiff’s answer was “Nothing” but at the time he placed his hand to his chest. The two men returned to the gear yard shortly before 12 o’clock. After lunch and shortly before 1 p. m. plaintiff was ordered to deliver 900 pounds of ice to three of defendant’s vessels. He obtained a tractor and a small iron ice wagon in the gear yard and drove about five blocks to the ice house where he purchased nine 100 pound blocks of ice. He loaded the ice on the ice wagon by picking up each block with tongs and lowering the same to the wagon, a drop of about 24 inches. He then delivered the ice to the water boys at the three different locations. After completing *295 that delivery he again met Rodriguez who ordered him to get another tractor. He walked several blocks for the purpose of obtaining the tractor and was gone for a longer time than usual. Rodriguez set out to find him and met him returning to the gear yard driving the tractor. Plaintiff asked Rodriguez to drive, an unusual request because plaintiff particularly liked to drive the tractor. When they arrived at their destination the pain from plaintiff’s shoulder and arm had become so severe that he had to be assisted to the office. An ambulance was called and he was taken to a hospital. 'During the course of all of this time the temperature rose from 81° to 92° and both plaintiff and Rodriguez testified it was extremely hot and they perspired freely. At the hospital it was determined, and later confirmed, that plaintiff had suffered an anterior myocardial infarction.
The record contains the testimony of three medical experts. One, Dr. Kenneth G. Nix, testified for the plaintiff; the other two, Drs. Samuel B. Nadler and Harold V. Cummins, testified for the defendant. There is no conflict in their testimony on two points: (1) prior to the attack plaintiff suffered from arteriosclerotic heart disease; and (2) as of the time of the trial he was unable to do any heavy work and was totally disabled from performing the work he had been doing for the defendant at the time of the attack.
Dr. Nix testified that strain caused by work and heat could precipitate myocardial infarction and he was of the opinion that the attack in the instant case was caused, precipitated or accelerated by plaintiff’s physical exertion and the heat.
Dr. Nadler was the treating physician. Pie testified that myocardial infarction is caused by an inadequate supply of blood to the heart muscle and that the attack suffered by the plaintiff was either a coronary thrombosis or an ischemic infarction, the former being a blocking of a coronary artery and the latter being a severe insufficiency of blood flow through the coronary arteries. Ordinarily thrombosis is not considered as being related to occupation while ischemic infarction is considered related to physical effort. Dr. Nadler further testified that these two causes of myocardial infarction can be distinguished on the basis of the patient’s history. When due to ischemia pain is felt at the time of the effort or very shortly thereafter. Dr. Nadler was of the opinion that plaintiff suffered a thrombosis for the reason that plaintiff had told this doctor, and this was the only source of any such information received by Dr. Nadler, that he had been doing only light work. However, on cross examination Dr. Nadler testified that, if the facts were as set out above, he would change his opinion and believe that plaintiff suffered, or could have suffered, an ischemic infarction.
We are satisfied that plaintiff did suffer pain at the time of his exertions and thereafter. His description to the doctor of the work he performed as being light work is quite understandable. It was light by comparison to the extremely heavy work associated with longshoremen.
Dr. Cummins gave testimony relative to myocardial infarction, coronary thrombosis and ischemic infarction generally. He did not see or examine the plaintiff and had no knowledge of his case or condition beyond that which he obtained from reading the reports of Drs. Nix and Nadler.
Our jurisprudence uniformly recognizes that benefits are due in compensation cases involving heart conditions resulting in disability or death, whether or not the condition is pre-existing, when caused, precipitated or accelerated by even the usual and customary activities, exertions and other factors directly connected with the employment. Franklin v. Old Colony Insurance Company, La.App., 150 So.2d 892; Andrepont v. Calcasieu Paper Company, La.App., 131 So.2d 585; Talbot v. Trinity Universal Insurance Company, La.App., 99 So.2d 811; Hemphill v. Tre *296 mont Lumber Co., 209 La. 885, 25 So.2d 625.
We are of the opinion that plaintiff is entitled to compensation benefits for total and permanent disability.
ALLOWANCE OF CREDIT
As we have set out above, defendant paid the plaintiff a total sum of $476.52 in 12 payments during the 14 weeks immediately following the attack. Four of these payments were in the amounts of $78.00, $39.72, $31.20 and $15.60 respectively. The remaining eight payments were in the amount of $39.00 each.
An employer is entitled to a maximum credit of $35.00 per week for each week he pays gratuitous wages to an injured employee; but he cannot receive a credit in excess of $35.00 per week even though the amount of the weekly gratuitous wage so paid actually is in excess of $35.00. Spencer v. Kaiser Aluminum And Chemical Corp., La.App., 152 So.2d 215; Delouche v. City of Monroe, La.App. 84 So.2d 259; Daigle v. Higgins Industries, La.App., 29 So.2d 374; Armen v. Standard Oil Co. of New Jersey, La.App., 28 So.2d 46. As the defendant cannot receive credit for more than it actually paid, for the two payments in the respective sums of $31.20 and $15.60 (in each case less than the required $35.00) it is entitled to a credit of the total amount thus paid, or $46.80; and for the remaining ten payments of more than $35.00 each it is entitled to a total credit of $350.00. The total amount of credit due to the defendant therefore is $396.80 and we amend the district court judgment accordingly.
PENALTIES AND PENALTY ATTORNEY FEES
The defendant is an employer whose liability for compensation benefits is not covered by insurance. It is therefore governed by LSA-R.S. 23:1201.2, which requires that payment of benefits shall be made within 60 days after receipt of written notice and provides that failure to make payment within that time, when such failure is found to be arbitrary, capricious or without probable cause, shall subject the employer to the penalties. Defendant contends that it is not liable for the penalties for two reasons: No written notice has been proved and its failure to make the payments when due was not arbitrary, capricious or without probable cause.
The absence of proof of written notice, by itself, cannot prevent the collection of penalties where the employer has actual knowledge of the accident and injury and the latter’s refusal to pay compensation benefits are not based on the absence of such statutorily required notice. See Glover v. Schuylkill Products Company, La.App., 138 So.2d 15; Finn v. Delta Drilling Company, La.App., 121 So.2d 340; Darby v. Johnson, La.App., 118 So.2d 707. Here defendant had actual and immediate knowledge of plaintiff’s heart attack and resulting disability and its answer denies all liability for compensation benefits. In such a case notice is not required.
We note that defendant’s failure to pay benefits was not occasioned by an error in medical judgment on the part of its medical doctor. It did not depend upon information from him that plaintiff was not incapacitated or had recovered; there was never any doubt about the facts of incapacity and nonrecovery. And regardless of how their medical expert may have felt about the question of whether or not plaintiff’s heart attack was a compensable injury, this was a legal question and not a matter for the doctor to decide. Although the defendant possessed all of the facts concerning the type of work being done by the plaintiff, and done by him on the day of the attack, so that it could have easily corrected their doctor’s erroneous impression relative to whether or not the work performed by plaintiff contributed to his *297 attack, it failed or neglected to do so and refused to pay compensation.
We are of the opinion that the district court judge properly awarded statutory penalties and attorney’s fees.
For the reasons assigned, the judgment appealed from is amended only insofar as to give defendant an initial credit in the total amount of $396.80. As thus amended, and in every other respect, the judgment is affirmed; defendant to pay all costs of this appeal.
Amended and affirmed.