163 So.2d 548

Frank SALTALAMACCHIA

v.

STRACHAN SHIPPING COMPANY.

No. 46993.

May 4, 1964.

McClendon & McClendon, William H. McClendon, Jr., New Orleans, for defendant, appellant and applicant in writ.

Reginald T. Badeaux, Jr., Robert R. Gisevius, New Orleans, for respondent.

McCALEB, Justice.

This is a suit for workmen's compensation benefits, statutory penalties and attorneys' fees. Plaintiff suffered a heart attack on June 29, 1959 while riding in a tractor and he claims that this seizure, which has totally and permanently disabled him, is attributable to the laborious duties he was required to perform.

Defendant denied liability and, after trial, the district court awarded compensation as prayed for together with statutory penalties and attorneys' fees in the

amount of $2,000. On appeal, the Court of Appeal, Fourth Circuit, affirmed the judgment with a minor amendment. See 156 So.2d 291. Upon defendant's application, we granted certiorari, 245 La. 98, 157 So.2d 236, limited to the question of the correctness of the portion of the judgment which awards penalties and attorneys' fees.

Plaintiff is an uneducated workman and was 62 years of age at the time the heart attack occurred. He had worked steadily for defendant since 1942. Originally he was a longshoreman but, in 1951, he suffered a severe injury consisting of a fractured skull and broken ribs and collar bone. After five months disability he returned to his employment with the defendant, doing lighter work entirely on shore and principally in the gear yard. At the time of the accident involved in this case he was engaged in this so-called lighter work, which consisted of driving a truck and assisting generally in loading and unloading operations. On the day of the accident he had helped his fellow worker, one Rodriguez, to remove heavy metal skids from a trailer and stacked some cross-ties. At about 1:00 p. m. he was ordered to deliver 900 pounds of ice to three of defendant's vessels, so he took a tractor and a small iron ice wagon from the gear yard, drove about five blocks to the ice house and, after purchasing the ice and loading the ice wagon, he delivered the ice to the vessels as directed. At about 2:00 p. m., while driving the trac-

tor, he suffered a pain in his shoulder and arm which became so severe that an ambulance was called and he was taken to a hospital. Upon arrival there, he was examined by defendant's physician, Dr. Samuel B. Nadler, who subsequently, after interrogating plaintiff concerning his activities and prior pains on the day he was stricken, diagnosed the ailment as a coronary thrombosis.

Since, at the time of trial, plaintiff was unable to perform the work he had been doing on the day of the attack, the only issue for decision in the courts below respecting defendant's liability for compensation was whether the myocardial infarction suffered by plaintiff was causally connected with his work.

Three doctors gave expert evidence—one for plaintiff and two for defendant. All agree that, prior to the disabling attack, plaintiff had suffered from arteriosclerotic heart disease. Dr. Nix, testifying for plaintiff, stated that he was of the opinion that the strain caused by work and heat either precipitated or accelerated the heart attack.

On the other hand, Dr. Nadler testified that myocardial infarction is the result of either a coronary thrombosis or an ischemic infarction (angina); that thrombosis is not considered as being related to occupation but that ischemic infarction may be attributable to physical effort; that these

two ailments can only be distinguished on the basis of the patient's history; that ischemia pain is felt at the time of the physical effort or very shortly thereafter; that, as treating physician, it was his opinion that plaintiff had suffered a thrombosis for the reason that plaintiff told him he was doing light work and that he had also told him that he did not, on the day of the heart attack, feel any pain prior to the seizure he suffered when stricken at 2:00 p. m.

The other physician, Dr. Cummins, gave expert evidence corroborative of Dr. Nadler's testimony.

Under this state of facts the Court of Appeal found that defendant acted arbitrarily and capriciously in refusing compensation based on the opinion of Dr. Nadler. It observed that, although Dr. Nadler testified that plaintiff had informed him that he (plaintiff) was doing light work, as a matter of fact, plaintiff was performing heavy work and that Dr. Nadler admitted that if plaintiff was doing that type of work and suffering pain at the time of the exertion, he would agree that plaintiff could have had an ischemic infarction. The court said:

"* * * defendant's failure to pay benefits was not occasioned by an error in medical judgment on the part of its medical doctor. It did not depend upon information from him that plaintiff was not incapacitated or had recovered; there was never any doubt about the facts of incapacity and nonrecovery. And regardless of how their medical expert may have felt about the question of whether or not plaintiff's heart attack was a compensable injury, this was a legal question and not a matter for the doctor to decide. * * *" (See 156 So.2d 296.)

The last quoted sentence, we believe, is out of context with the issue of penalties and attorneys' fees which the court was then considering. True enough, the question whether plaintiff's heart attack was causally connected with his work was a factual question for the court, and not for the doctor, to decide. But the doctor's opinion was highly pertinent as an aid to the court in reaching its decision. Even if not accepted by the court, this medical opinion was the controlling factor in determining whether defendant had acted arbitrarily and capriciously in refusing compensation and, therefore, subject to the penalties and attorneys' fees provided by R.S. 23:1201.2. For, unquestionably, if defendant had the right to rely on the opinion of its doctor that plaintiff suffered a coronary thrombosis which was not attributable to his work, then it did not act arbitrarily in resisting plaintiff's claim even

though plaintiff was ultimately successful in court. [1]

The Court of Appeal was apparently of the opinion that, since defendant knew that plaintiff was doing heavy work, although not as strenuous as that of a longshoreman, it became its duty to inform Dr. Nadler that he had an " * * * erroneous impression relative to whether or not the work performed by plaintiff contributed to his attack, * * * " and that, failing to do so, it has acted arbitrarily.

This conclusion, in our opinion, is not justified as it placed the onus on defendant to contradict the information that plaintiff himself had given Dr. Nadler regarding the type of work in which he was engaged, i. e., light work which, indeed, plaintiff consider-ed to be of that character in comparison to the longshoreman work in which he had previously engaged for many years.

Furthermore, the resolution of the court does not take into consideration the fact that Dr. Nadler also testified that plaintiff steadfastly informed him that he had felt no pain until 2:00 p. m. when he suffered the attack. [2] Even the report of Dr. Nix states that plaintiff told him that he expe-rienced no pain until 2:00 p. m. and plaintiff himself repeated on the stand that he told Dr. Nadler that he had not suffered any pain before 2:00 p. m. and also that he was engaged in light work.

In addition, Rodriguez, plaintiff's fellow worker, testified that plaintiff never complained before the heart attack at 2:00 o'clock and he and other employees stated that work in the gear shed is considered light work as compared to the duties of a longshoreman.

Under the circumstances of this case, it is our view that the defendant was entitled to rely on the opinion of Dr. Nadler and

---

1. Kline v. C. W. Dawson Lumber Co., 230 La. 901, 89 So.2d 385; Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399; Finley v. Hardware Mu-tual Insurance Company, 237 La. 214, 110 So.2d 583; Guillory v. Southern Farm Bureau Casualty Ins. Co., 237 La. 374, 111 So.2d 314; Tullier v. Ocean Accident & Guarantee Corp., 243 La. 921, 148 So. 2d 601. See also Vidrine v. American Employers Insurance Company, La.App., 129 So.2d 288; Bertrand v. Patterson Truck Line, La.App., 138 So.2d 663; O'Neal v. French Unique Laundry Clean-ers, La.App., 149 So.2d 431; Spencer v. Kaiser Aluminum and Chemical Corp., La.App., 152 So.2d 215 and Price v. Houston Fire & Casualty Ins. Co., La. App., 155 So.2d 213.

2. Dr. Nadler also testified that he learned from plaintiff's wife that he suffered a mild indigestion attack on the day before and he questioned plaintiff about the on-set of pain and the specific time. He was told in reply that plaintiff suffered no pain until two o'clock on the date of the attack, when he was riding in the trac-tor. This made Dr. Nadler emphatic in his diagnosis that plaintiff did not suf-fer ischemic infarction but coronary thrombosis. As a matter of fact, in regard to the indigestion, plaintiff de-nied that he ever suffered indigestion the day before, as did his wife when inter-rogated about this fact.

we find no just reason for holding that defendant was charged with knowledge of the case history given by plaintiff to Dr. Nadler, on which the latter's medical opinion was based, or that it had any duty of informing Dr. Nadler that such case history was not wholly correct. Indeed, we think the contrary position requires a ruling that defendant had medical knowledge that plaintiff's performance of heavy work would warrant a change of opinion by Dr. Nadler.

For the foregoing reasons the judgment of the Court of Appeal, insofar as it assesses penalties and attorneys' fees against the defendant is annulled and reversed and plaintiff's demand is rejected to this extent. All costs of this Court are assessed against the plaintiff.