HOOD, Judge.
Plaintiff, Johnny C. Landry, instituted this workmen’s compensation suit against his employer, Park Wood Products, Inc., claiming benefits based on total and permanent disability, Judgment on the merits was rendered by the trial court in favor of defendant, rejecting plaintiff’s demands, and plaintiff has appealed.
Plaintiff sustained a heart attack while working for defendant on August 26, 1966, and as a result of that attack he has been totally disabled within the meaning of the Workmen’s Compensation Act since that time. The principal question presented on this appeal is whether the heart attack which plaintiff suffered on the above mentioned date was caused by and directly related to the work which he was performing in the course of his employment on that date.
At the time the.alleged accident occurred, and for many years prior thereto, defendant was engaged in the business of manufacturing wooden cabinets, including chests for silverware and cabinets for high fidelity loud speakers. Plaintiff, a 44-year-old slightly obese man, had been employed by defendant for a number of years as a “spray finisher” in its manufacturing plant. A substantial part of plaintiff’s duties included the spraying of partially completed cabinets with a stain and then wiping the stain off with rags. In performing those duties it was necessary for him to do some lifting or moving of the cabinets.
Plaintiff reported to work at 7:00 a. m. on August 26, 1966, and he began working about 10 or 15 minutes later. At about 8:30 a. m. he experienced a pain in his chest which he thought was caused by indigestion. He quit work at that time and took some antacid tablets in the hope that they would give him relief. He then rested for a while, but the pain persisted so he left the plant about 9:45 that morning to obtain treatment. An examination made by Dr. R. L. Robbins on that day revealed that plaintiff had suffered a heart attack, diagnosed more specifically as an acute myocardial infarction. He was hospitalized for nine days, and the evidence is clear that he is totally and permanently disabled as a result of that heart attack.
*308 The only items which were being fabricated in defendant’s plant on the day plaintiff sustained this heart attack were cabinets for high fidelity speakers. As the cabinets were being manufactured they would be transported to the various workers by a conveyor belt or by dollies. There were only four employees, other than the foreman, working in the plant that day, one of whom was plaintiff and two of whom were women employees. Plaintiff was performing his usual duties of spraying the cabinets and then wiping them off. Each cabinet was about 13 by 16 by 25 inches in size. Plaintiff and most of the other employees estimated the weight of each such cabinet at from 15 to 25 pounds. The foreman weighed one of them and • found that it weighed 27i/*> pounds.
There is a conflict in the testimony as to whether plaintiff lifted any of these cabinets during the short period or time he worked that day. He testified that he did, and that he was actually lifting one of them from that conveyor belt to a dolly or rack when he first got sick. His foreman and one of his fellow employees testified that he did not lift any cabinets that morning. The other two employees stated that they did not see him do any lifting. The trial judge, accepting plaintiff’s version of the facts, concluded that during the time plaintiff worked that day he lifted some of the cabinets off the conveyor belt and placed them on racks or dollies so they could be hand sanded by other employees. After they had been sanded, plaintiff then removed the cabinets from the dollies, placed them on a stand, sprayed them with a liquid and then wiped the cabinets off with a rag. This, of course, was the way in which he routinely performed his usual duties every day, and it had been routine for him for several years. He testified that the cabinets which he lifted that morning were heavier than usual, because the defendant manufactured more silverware chests than speaker cabinets, but that he had lifted heavier cabinets or boxes in performing the duties of his employment.
Plaintiff did not remember how many cabinets he had lifted that morning before he got sick. The evidence shows, however, that work in the plant proceeded without interruption after plaintiff quit working at about 8:30 a. m., and that a total of only 36 cabinets were worked on that day. Plaintiff obviously could have handled only a few of the cabinets during the short period of time he worked. One of the employees testified that the work performed by plaintiff was not strenuous, and the evidence supports that statement. The women employees in the plant performed the same type of duties as those performed by plaintiff. One of them, Mary Monk, testified that she lifts cabinets from the conveyor belt and puts them on dollies every day as a regular part of her job. Another woman employee, Ella Metoyer, testified that she pulls the racks or the dollies from place to place in the plant as a part of her duties, and that she did that on the morning plaintiff got sick. The trial judge concluded that the usual work which was performed by plaintiff, and particularly the work which he performed on the morning he sustained the heart attack, “was not strenuous or arduous work.” We concur in that finding.
The building in which this work was being done is cooled and ventilated by exhaust fans. There is a “tunnel” in the building, however, which is heated by steam, and the cabinets are carried through this heated tunnel on a conveyor belt as a part of the finishing process. The heat from the tunnel causes the inside of the building to be warmer than it would be if the heated tunnel were not there, and plaintiff contends that the heat contributed toward his illness. Plaintiff, however, suffered his heart attack rather early in the morning, and although it was hot in the building the evidence indicates that it was not extremely hot and certainly not as hot as it generally gets later during the day at that time of the year. The following are some of plaintiff’s statements as to the temperature in the building that day: “It gets pretty warm *309 in there * * *. That was early in the morning, it wasn’t too hot * * *. To the best of my knowledge it was not that hot at that time, but it gets hot enough * * *. Well, I had a moisture sweat— it was warm enough * * *. It was hot. When I got sick it was hot in there * * *. I got very hot * * * it wasn’t hot as it generally gets * * *. I don’t think it was overheating that actually really brought it (the heart attack) * * We think the evidence shows that plaintiff did not get overheated that morning.
Dr. R. L. Robbins, a specialist in internal medicine, examined plaintiff shortly before noon on August 26, 1966, and he has been treating him since that time. He diagnosed plaintiff’s condition as an acute or massive myocardial infarction, and he feels that plaintiff is totally and permanently disabled. Dr. Robbins testified: “I believe there’s no doubt that since his symptoms occurred while he was doing this work, that it was as a result of the work.” This appears to be the only statement made by Dr. Robbins which relates to the principal issue presented here, that is whether there was a causal connection between plaintiff’s work and his present disability. It is clear from the quoted statement that in Dr. Robbins’ opinion there was a causal connection between plaintiff’s work and his present disability. As we understand his testimony, however, his reasoning is that if a heart attack occurs while the patient is at work then it necessarily follows that the attack occurred as a result of the work.
Dr. Robert Edwin Ball, Jr., also a specialist in internal medicine, examined plaintiff on January 19 or 20, 1967. He concluded that plaintiff had suffered a myocardial infarction which was caused by a coronary occlusion, and he agreed with the treating physician that plaintiff was totally and permanently disabled. Dr. Ball is of the firm opinion, however, that there is no causal connection between the work which plaintiff was performing and the heart attack which he suffered. He testified that a coronary occlusion is the result of arteriosclerosis which is a natural disease that develops over a long period of time, and that in his opinion the coronary occlusion which plaintiff suffered can be attributed only to the pre-existing disease which he had and not to the work he was performing. The history which he obtained from Landry indicated that when the heart attack occurred plaintiff was performing the same routine duties which he had been performing every work day for a number of years, including the lifting of some cabinets. The history indicated that each cabinet weighed about 25 pounds, and the doctor concluded that the work which plaintiff was performing was relatively light work. He assumed that it was hot in the building, but he felt that the heat had nothing to do with the heart attack since plaintiff was accustomed to it on a day-to-day basis. He agrees that strenuous physical activity or unusual exertion could contribute to a heart attack, but he feels that there was no such exertion, unusual heat or other factors present here which could have had any causal connection with plaintiff’s illness and disability. He testified that “More people with sedentary occupations have heart disease than do laborers.” He stated that in his opinion plaintiff in this suit had a pre-existing heart disease, that the heart attack resulted solely from that disease, and that the work which plaintiff was performing did not cause, contribute to or accelerate the heart attack.
The trial judge rejected the testimony of the treating physician and accepted that of Dr. Ball. With reference to the testimony of Dr. Robbins, the trial court said: “I do not find this to be medically sound nor legally sound reasoning * * *. So the testimony of the only medical doctor for the plaintiff is without good sound reasoning and cannot be accepted upon which to base an opinion.” After discussing the testimony of Dr. Ball, the trial judge assigned the following additional • reasons for rejecting the testimony of one doctor and accepting that of the other: “First, Dr. Robbins gave no basis for his *310 opinion which all experts are required to do. The Court cannot accept an opinion of an expert without reason or basis for that opinion. Second, Dr. Ball gave reasons for his opinion and his testimony is wholly acceptable because of that reason.” The trial judge then concluded that “the plaintiff has failed to prove by the preponderance of evidence required even in workmen’s compensations that there was any causal connection * *
The plaintiff in a workmen’s compensation suit, as in any other civil case, bears the burden of proving by a preponderance of the evidence that there is a causal connection between the employment activity and the death or disability of the employee from a heart condition. Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Prater v. Liberty Mutual Insurance Company, 182 So.2d 805 (La.App. 3d Cir. 1966).
Our jurisprudence is settled that benefits are due in compensation cases involving heart attacks resulting in disability or death, although there may have been a pre-existing heart or vascular disease if the heart attack was caused, contributed to or accelerated by physical exertion, excessive heat, heavy lifting or other strenuous effort, even though usual or customary in the employment. Nickelberry v. Ritchie Grocer Co., supra; Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946); Prater v. Liberty Mutual Insurance Company, supra; Prejean v. Bituminous Casualty Corporation, 125 So.2d 221 (La.App.3d Cir. 1960); Saltalamacchia v. Strachan Shipping Corp., 156 So.2d 291 (La.App.4th Cir. 1963, reversed in part on other grounds, 246 La. 91, 163 So.2d 548); Franklin v. Old Colony Ins. Co., 150 So.2d 892 (La.App.4th Cir. 1963, Cert. refused); Andrepont v. Calcasieu Paper Co., 131 So.2d 585 (La.App.3d Cir. 1961) ; Fontenot v. Camden Fire Insurance Association, 124 So.2d 640 (La.App.3d Cir. 1960, Cert. denied).
In Nickelberry v. Ritchie Grocer Co., supra, our Supreme Court said:
“ * * * if excessive heatj or heavy lifting, or straining, although usual and customary, or both, cause or contribute to a physical breakdown, or accelerate its happening, the legal requirements necessary to constitute an accident are present and such cases are compensable.” (Emphasis added.)
The case of Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468, involved a paralytic stroke instead of a heart attack. In deciding that compensation benefits were not due in that case, however, the Supreme Court made the following observation with reference to the Nickelberry case, supra:
“ * * * in Nickelberry v. Ritchie Grocer Co., supra, recovery was denied where the proof did not show that the condition developed as the result of unusual strain, heavy lifting or the like, as it is necessary that the breakdown result from such labors in order that the disability can be said to have resulted from the ‘accident.’ ”
In the Danziger case, after citing a number of heart attack cases, the Supreme Court went on to say:
“ * * * in cases involving diseases of the heart or blood vessels, it is essential to show by strong evidence that the disability was attributable entirely to the laborious work in order for recovery to be had.”
The same court, in Hemphill v. Tremont Lumber Co., supra, said:
“Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine whether this is one of those cases that comes within our well-settled jurisprudence that the legal requirements are present to constitute an accident and *311 an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition (Citations omitted.)
“We think the overwhelming preponderance of the evidence shows that the strain on Hemphill’s heart because of the strenuousness of the work and the heated conditions under which he was working were the motivating causes of his death.” (Emphasis added.)
We affirmed the trial court in rejecting plaintiff’s demands for compensation benefits in Prejean v. Bituminous Casualty Corp., supra, because the heart attack and resulting death were not precipitated by physical exertion or mental stress. In that case we said:
“In the instant case there is no evidence that Prejean did anything other than drive around in the police patrol car on the morning of his heart attack. There is no evidence that he performed any duties requiring physical exertion or placing him under mental stress sufficient to cause an extra demamd upon his heart, thereby precipitating the coronary occlusion. None of the expert medical witnesses who testified expressed an opinion that there was any causal relationship between Prejean’s employment and his heart attack.” (Emphasis added.)
And, in rejecting plaintiff’s demands for compensation benefits in Eontenot v. Camden Fire Ins. Co., supra, we said:
“In the instant case there is no proof whatever that, on the morning of his attack, plaintiff was performing strenuous physical labor or working under conditions of excessive heat or under a sudden or intensive mental strain such as would make excessive demands on his heart. (Emphasis added.)
Professor Wex Malone, in his excellent work entitled “Louisiana Workmen’s Compensation Law and Practice,” appropriately observes:
“The issue of causal relation is now usually resolved into the sufficiency of alleged exertions and overheating to injure the heart or blood vessel in the specific case. Stroking a furnace, carrying ice, operating a drag line, sawing wood, carrying cross ties, cooking glue, and boiler making have all been held to have aggravated the employee’s preexisting weakened condition. On the other hand, where the evidence showed only slight or no exertion or heat, recovery has uniformly been denied.”
In view of the cited jurisprudence, we think the burden of proof is on plaintiff in the instant suit to show by a preponderance of the evidence that the heart attack which he suffered was caused, precipitated, contributed to or accelerated by some physical exertion, excessive heat or mental stress to which he was subjected in the course of his employment. We agree with the trial judge that the evidence fails to show that plaintiff performed any strenuous manual labor or that he was subjected to excessive heat or to mental stress during the course of his employment on the day he suffered the heart attack, and that plaintiff thus has failed to show a causal connection between his employment activities and his present disability.
We cannot agree with plaintiff’s argument that he is entitled to compensation benefits simply because his work required physical effort and the heart attack occurred while he was performing the usual and customary duties of his employment. In our opinion the six cases which plaintiff cites do not support that argument. We have already discussed the Danziger and Hemphill cases, supra, both of which were decided by our Supreme Court. In the Andrepont case, supra, we specifically pointed out that the plaintiff was per *312 forming “hot and heavy work.” In Franklin v. Old Colony Insurance Company, supra, the decedent was a carpenter who sustained a heart attack while he was working on the roof of a house in 86 to 90 degree weather. The medical evidence showed that “climbing a ladder and doing carpentry work beneath a July sun could ‘trigger off’ a heart attack on any man with a bad heart and that ‘everything’ in Franklin’s history pointed to a bad heart.” In Saltalamacchia v. Strachan Shipping Corp., supra, plaintiff, a 62-year-old man who was able to do only light work because of a previous injury, was performing unusually heavy labor at the time he sustained a heart attack. His activities immediately preceding the attack included the assisting of another employee in moving two 300 pound metal skids on two different occasions, the handling of heavy steel chains, walking several blocks, and loading 900 pounds of ice on a wagon, carrying each 100 pound block with ice tongs and slowly lowering it 24 inches into the wagon. All of this was done on June 29, in temperatures ranging from 81 to 92 degrees. The last case cited by plaintiff, Talbot v. Trinity Universal Insurance Company, 99 So.2d 811 (La.App.1st Cir. 1958, Cert. denied), is not applicable because it involved a back ’injury, rather than a heart or vascular disease.
After reviewing the evidence we conclude, as did the trial judge, that plaintiff has failed to show a causal connection between his employment activities and his present disability.
Plaintiff argues, alternatively, that the trial judge erred in refusing to permit him to introduce evidence to rebut the testimony of Dr. Ball, and that the case thus should be remanded to permit him to introduce that rebuttal evidence.
The record indicates that the trial was completed, including plaintiff’s rebuttal evidence, on January 31, except that the testimony of Dr. Ball, a witness for defendant, was taken the next day, February 1, 1967. According to the transcript, defendant rested its case with the statement of counsel, “Your Honor, outside of Dr. Ball’s testimony that’s all I have.” Court Minutes of January 31 show “Matter laid over until the following day for additional testimony.”
Judgment on the merits was rendered at the conclusion of the trial on February 1, and the formal decree was read and signed on February 6, 1967. Plaintiff then filed a motion for a new trial on February 9, alleging that “The court closed the evidence of this case without allowing plaintiff to complete his rebuttal, or to rebut the testimony of Dr. R. E. Ball,” that Dr. Ball did not examine plaintiff until late in January, that his report was not submitted to plaintiff’s attorney until just a few days prior to trial, that plaintiff had been unable to talk to Dr. Ball prior to the time he was called as a witness and that plaintiff did not have adequate time after receiving Dr. Ball’s report to have plaintiff examined by another medical specialist. The trial court denied plaintiff’s motion for a new trial on March 3, 1967.
Although the record does not show that plaintiff offered additional rebuttal evidence or that the court ever ruled that such evidence could not be produced, counsel for both parties indicate in their briefs that such an offer was made by plaintiff. As we understand the facts related in the briefs, at the beginning of the trial defendant asked that the case be held open until the next day to take the testimony of Dr. Ball, and permission to do so was granted by the court. Plaintiff expressed no objection and he did not indicate that he wanted to introduce evidence to rebut Dr. Ball’s testimony. At the conclusion of Dr. Ball’s testimony taken on February 1, plaintiff then requested permission to introduce evidence to rebut the doctor’s testimony. This request was denied by the trial judge, who stated that the trial had been laid over solely for the introduction of Dr. Ball’s testimony and for no other purpose.
*313 In this court plaintiff argues that since plaintiff did not have the opportunity for discovery, he should be given the opportunity to rebut the testimony of Dr. Ball and that “it was an error of law and abuse of discretion to deny plaintiff the right of rebuttal in these proceedings.” Defendant resists plaintiff’s request for a remand on the ground that “plaintiff agreed that the case be held open for the purpose of taking Dr. Ball’s testimony and for no other purpose,” and that the fact that he is not satisfied with the testimony of Dr. Ball does not give him the right to have the case re-opened to get in additional and cumulative evidence which he could have obtained by exercising reasonable diligence prior to the trial.
Plaintiff has not alleged a peremptory ground for the granting of a new trial. See LSA-C.C.P. art. 1972. Where peremptory grounds are not alleged, the granting or refusing of a new trial under LSA-C.C.P. art. 1973 is within the sound discretion of the trial court, and the trial court’s action in refusing to grant a new trial will not be set aside unless there has been a clear or manifest abuse of that discretion. Strobel v. Schlegel, 145 So.2d 664 (La.App.4th Cir. 1962, Cert. denied); Andrews v. Trosclair, 197 So.2d 209 (La.App.3d Cir. 1967); Sears, Roebuck and Company v. Cannizzarro, 142 So.2d 566 (La.App.4th Cir. 1962); De Frances v. Gauthier, 220 La. 145, 55 So.2d 896 (1951).
In Andrews v. Trosclair, supra, we affirmed the action of the trial court in refusing to grant a new trial to allow plaintiff to produce additional medical evidence, because we concluded that the additional evidence was “merely cumulative and could have been discovered by due diligence before or during the trial.”
In the instant suit the trial was continued to the second day pursuant to stipulation of counsel for the sole purpose of taking Dr. Ball’s testimony. Plaintiff had presented his rebuttal evidence on the first day of. the trial, and after doing so he submitted the case subject to the taking of Dr. Ball’s testimony. No desire to introduce additional rebuttal evidence was expressed until after Dr. Ball had testified on February 1, and we are unable to determine from the record or briefs whether plaintiff was prepared to present that evidence at that time or whether an additional delay would have been required.
Neither in the motion for a new trial nor in brief does plaintiff indicate the nature of the evidénce which he seeks to introduce in rebuttal. He merely alleges and asserts that he should be given the opportunity to rebut the doctor’s statements and that his testimony “could be rebutted by other medical specialists whether physical examination of the defendant was made or not.” No affidavit was attached to the motion, as provided in LSA-C.C.P. art. 1975, and we have no way of knowing whether the evidence which plaintiff intended to present would or would not have been merely cumulative. Also, there is no explanation as to why plaintiff could not have discovered this additional rebuttal evidence before the trial. The record shows that Dr. Ball examined plaintiff 11 or 12 days before the trial began., In the motion for a new trial plaintiff alleges that “his (Dr. Ball’s) report was submitted to plaintiff’s attorney just a few days prior to trial, there was no adequate time in which to secure an examination by another medical specialist.”
The allegations in the motion and the arguments presented by plaintiff do not convince us, and they apparently did not convince the trial judge, that plaintiff with due diligence could not have discovered and prepared his rebuttal evidence prior to the trial. Even though he may not have been able to talk to Dr. Ball, his counsel had the doctor’s report “a few days” before the trial, and he knew what the doctor would say at the trial. If plaintiff was unable to discover the rebuttal evidence he needed between the time he received Dr. Ball’s report and the time of the trial, then we think he should have asked for a continuance, reserved the right to present rebuttal evidence the next *314 day or at least he should not have stipulated that the case would be continued solely for the purpose of taking Dr. Ball’s testimony.
Under all of the circumstances presented here, we find no abuse of discretion on the part of the trial court in refusing to permit plaintiff to present additional rebuttal evidence or in refusing to grant a new trial.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.