FLORIAN DOCKENDORF v. ANNETTE LAKIE
AND ANOTHER.
ST. PAUL MERCURY INDEMNITY COMPANY,
INTERVENOR.[1]

December 11, 1953.

Nos. 35,932, 35,933.

[1]Reported in 61 N. W. (2d) 752.

442

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and
*Wm. D. Flaskamp,* for appellant.
*Gordon Rosenmeier* and *John E. Simonett,* for respondent-plaintiff.

MATSON, JUSTICE.

Intervenor appeals from an order denying its motion to correct the judgment in intervention and from an order granting plaintiff's motion for a new trial of all issues raised by intervenor's complaint in intervention and vacating the judgment in intervention.

Plaintiff was injured in an accident which arose out of his employment; the employer's insurer paid to plaintiff $6,360.89 as workmen's compensation—$1,647 for periodic disability benefits and $4,713.89 for medical expense. Plaintiff then sued defendants, third parties, in negligence under M. S. A. 176.06, subd. 2, and received a verdict of $12,000. Plaintiff's motion for a new trial on the issue of damages alone was denied. Dissatisfied with the result, plaintiff then discharged his attorneys. When it became apparent that the plaintiff would not repay the insurer as it had been theretofore apparently agreed by his attorneys, the insurer formally moved the court on January 7, 1950, for permission to intervene. The defendants also moved for an order requiring plaintiff to execute a satisfaction of the judgment upon tender of the $12,183.10 and interest or in the alternative for an order directing the clerk to execute a satisfaction upon payment into court of the amount due. At the same time plaintiff's discharged attorneys moved for an order requiring plaintiff to pay their attorneys' fees.

On January 14, 1950, after a continuance from January 7 to enable plaintiff to obtain new legal counsel, the latter two motions

came on for hearing but no appearance was made by or in behalf of the plaintiff. Pursuant to these hearings the court on January 21, 1950, ordered the clerk to execute a satisfaction of the judgment against defendants upon payment into court of the sum due and to pay out of that sum the amount ordered to plaintiff's former attorneys. The court then also granted the insurer's motion to intervene and ordered the clerk to retain $6,360.89 of the sum paid into court by the defendants. The intervenor (the compensation insurer) served the summons and complaint in intervention on plaintiff on January 26, 1950. After the service of the complaint in intervention but before the time for answering had expired, namely on January 28, 1950, defendants paid the $12,625.10 into court and received a satisfaction; the clerk then paid the plaintiff's former attorneys.

The demand for judgment in intervenor's complaint prayed for no other relief than that judgment for $6,360.89 be entered "against defendants herein and that defendants be authorized to pay such sum to intervenor and that such payment shall reduce the amount of defendants' liability to plaintiff herein." Although plaintiff was served with the complaint, he made no appearance or answer and was in complete default. Likewise, defendants neither appeared nor answered. Treating the case as a default matter, the court on March 1, 1950, made its findings and ordered that judgment for $6,360.89 be given for the intervenors—*without, however, specifically stating against whom the judgment should be entered*—and also ordered that the clerk of the court, upon entry of such judgment and a tender of satisfaction thereof, disburse to the intervenor the amount of the judgment. Despite the demand in intervenor's complaint for judgment against the defendants only, the clerk entered default judgment against the plaintiff.

On September 5, 1950, plaintiff (by his newly retained counsel) moved to amend the findings of fact and conclusions of law of the judgment in intervention or in the alternative to vacate the judgment in intervention or for an order for a new trial. Intervenor moved to correct the judgment to show judgment against defendants instead of plaintiff. On July 21, 1952, the court denied the inter-

venor's motion to correct and granted plaintiff's motion to set aside the "judgment" of the court and for a new trial on all issues raised by the intervention proceedings. Intervenor appeals from both orders.

We have these issues:

(1) Is strict compliance with a prayer for relief in the complaint a jurisdictional prerequisite for the entry of a valid default judgment?

(2) Under § 176.06, subd. 2, is an employer's subrogration right limited to the recovery of periodic disability benefits paid or does it also include payments for medical expenses?

■ Intervenor's motion to correct the default judgment to show that it was entered against the defendants instead of the plaintiff was properly denied. When such judgment was entered defendants had already discharged their liability to the plaintiff by paying $12,625.10 into court and had received a satisfaction therefor. After a defendant discharges his entire judgment liability to the plaintiff by paying, with the court's approval, the amount of the judgment into court and receiving a satisfaction from the clerk, no subsequent and further judgment upon the same cause of action may be entered against the defendants in favor of the plaintiff or an intervenor.

■ May the judgment entered be sustained, however, on the theory that it does not result in any prejudice to the plaintiff? In answering this question we cannot overlook the fact that the demand for judgment in intervenor's complaint asks specifically for a judgment against the defendants for $6,360.89 and that defendants be authorized to pay the sum thereof to intervenor. Under the circumstances the court could jurisdictionally enter a default judgment *only against the defendants* and then only before they had paid the money into court and received a satisfaction. Insofar as here pertinent, Rule 54.03 of the Rules of Civil Procedure provides:

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."

Rule 54(c) of the Federal Rules of Civil Procedure is identical as to default judgments[2] and has been held to apply generally to any nonappearing defendant who is in complete default[3] and to authorize the court to enter a default judgment only for the *exact* relief demanded in the complaint.[4]

Prior to the adoption of the new rules of civil procedure we were governed by M. S. A. 548.01 which provided that the relief granted by a default judgment should not exceed that demanded in the complaint. In Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L.R.A.(N.S.) 803, 118 A. S. R. 612, 11 Ann. Cas. 348,[5] in applying and construing § 548.01,[6] this court specifically held that the granting of any relief by a default judgment *in excess of the relief demanded by the complaint* is not a mere irregularity and that such judgment *to the extent of such excess relief* is extrajudicial and void.[7] In later decisions involving § 548.01 we have emphasized that on default the relief which may be rewarded is *strictly limited* in nature and degree to the relief *specifically demanded* in the complaint even though the allegations and the proof would justify different or greater relief.[8]

In the light of the federal decisions and of our own decisions under § 548.01 we hold that, pursuant to Rule 54.03, a default judgment entered against a defendant (or other party against whom judgment is sought) who is in complete default is valid only to the extent that the relief granted by such judgment is *strictly* confined to the kind and amount prayed for in the complaint's demand for

[2]See, 3 Youngquist & Blacik, Minnesota Rules Practice, pp. 46 to 53.

[3]Peitzman v. City of Illmo (8 Cir.) 141 F. (2d) 956, certiorari denied, 323 U. S. 718, 65 S. Ct. 47, 89 L. ed. 577, rehearing denied, 323 U. S. 813, 65 S. Ct. 112, 89 L. ed. 647.

[4]3 Barron & Holtzoff, Federal Practice and Procedure, § 1194.

[5]See Note in re Sache case in 7 Col. L. Rev. 551.

[6]Then R. L. 1905, § 4264.

[7]As to the equitable origin of the Sache rule, see Northern Trust Co. v. Albert Lea College, 68 Minn. 112, 71 N. W. 9, and 7 Col. L. Rev. 551.

[8]Pilney v. Funk, 212 Minn. 398, 3 N. W. (2d) 792; Duenow v. Lindeman, 223 Minn. 505, 27 N. W. (2d) 421; 3 Dunnell, Dig. & Supp. § 4996, and cases cited therein.

judgment. In applying this rule to the instant case it becomes clear that we are concerned with a more basic defect than that of a mere clerical mistake in entering an unauthorized judgment against the plaintiff. The court, although barred from imposing any further judgment liability upon the defendants, was without power to enter a valid judgment against plaintiff even though proof would establish that defendants were no longer in the picture because of *the limitations imposed by the demand for judgment.* Whether the plaintiff knew that defendants had satisfied their judgment obligation to him by paying the money into court and whether he therefore assumed that he no longer would be prejudiced by any judgment entered pursuant to intervenor's complaint we cannot know. The requirement of strict compliance with the limitations of the demand for judgment in the complaint is not to be emasculated by resort to a speculative assumption that insofar as such relief exceeds or differs from that contained in the demand for judgment no prejudice will result to the judgment debtor. Aside from any question of prejudice to the plaintiff it is sufficient to note that, as long as plaintiff was in default, no valid judgment could be entered against him. The trial court therefore did not err in granting a new trial.

■ Pursuant to § 176.06, subd. 2, is an employer's (or his insurer's) subrogation right limited to the recovery of periodic disability benefits paid or does it also include payments for medical expenses? Whether the court erred in allowing the subrogee to recover medical disbursements will continue to be an issue upon a new trial and will therefore be decided herein. By its express wording § 176.06, subd. 2, limits the right of subrogation—aside from certain suit costs, expenses, and attorney's fees—to the amount of *compensation* paid the employee. As used therein, does the word *compensation* include medical expenses paid? Unless the language or context of § 176.06, subd. 2, *clearly indicates that a different meaning is intended* (§ 176.01, subd. 1), we are bound by the definition set forth in § 176.01, subd. 2, which states that the word "compensation" *indicates the money benefits to be paid on account of injury or death.* This court has consistently held that the term

*compensation* as defined in § 176.01, subd. 2, includes not only all periodic disability benefits paid but also payments for medical care and hospitalization.[9]

In view of the foregoing statutory definition as interpreted by this court, we need only consider whether the language or context of § 176.06, subd. 2, *clearly indicates* that the word "compensation" as used therein *was not intended to include medical benefits.* Taking subd. 2 by itself, there is nothing in the language to indicate that the word *compensation* was not intended to include medical benefits. It is true that the preceding subd. 1 of § 176.06 specifies that a subrogated employer may recover "the aggregate amount of compensation *and medical expense.*" (Italics supplied.) Plaintiff asserts that the specific mention of medical expenses in subd. 1, and the failure to expressly designate them in subd. 2, is necessarily indicative of a legislative intent that the word *compensation* standing alone in the latter section does not include medical expenses. This difference in context is here of little significance. As originally enacted both subds. 1 and 2 of § 176.06 (G. S. 1913, § 8229) used only the word *compensation* and made no specific mention of medical expenses. Although the compensation act—inclusive of these subdivisions of § 176.06—was subsequently revised and amended in various ways,[10] the sole use of the word *compensation* was continued with respect to both subds. 1 and 2 until 1937 when (L. 1937, c. 64) subd. 1 was amended to make specific mention of medical benefits. It is significant that long before the 1937 amendment was adopted the word *compensation* had been judicially construed to include medical benefits. See, Kummer v. Mutual Auto Co. 185 Minn. 515, 241 N. W. 681. No doubt the legislature was familiar with the judicial interpretation of the definition contained in § 176.01, subd. 2, and its bearing upon the word *compensation* as found in § 176.06, subd. 2. See, § 645.17(4). If in 1937 it had been

---

[9]Frank v. Anderson Brothers, 236 Minn. 81, 51 N. W. (2d) 805; Hanson v. Hayes, 225 Minn. 48, 29 N. W. (2d) 473; Fehland v. City of St. Paul, 215 Minn. 94, 9 N. W. (2d) 349; Kummer v. Mutual Auto Co. 185 Minn. 515, 241 N. W. 681.

[10]See, L. 1919, c. 356; L. 1921, c. 82; L. 1923, c. 279.

intended to exclude medical expenses from the subrogation right of recovery under § 176.06, subd. 2, it is only reasonable to assume that the legislature would have expressly amended that section accordingly. Speculation as to why the legislature saw fit in 1937 to clarify the language of subd. 1 without giving consideration to subd. 2 is not of itself sufficient *to indicate clearly*,[11] by the resulting difference in wording, an intent to effect a change in the judicially established meaning of the word *compensation* as used in § 176.06, subd. 2, and as defined in § 176.01, subd. 2.

In the light of the history of these statutory provisions, coupled with their judicial interpretations of long standing, we can only conclude that the word *compensation* as used in § 176.06, subd. 2, includes not only the periodic disability benefits paid but also medical expenses. Our conclusion is fortified by the realization that, if we were to hold that the term compensation does not embrace medical expenses paid, we would thereby, contrary to § 645.17(1), attribute to the legislature an intent to bring about the absurd and unreasonable result that an employee is to be permitted to recover twice the amount of his medical expenses, namely, once from the employer (or his compensation insurer) and once more from a third-party tortfeasor. Furthermore, our construction carries out the purpose of the subrogation provision in § 176.06, subd. 2, which in Gleason v. Geary, 214 Minn. 499, 507, 8 N. W. (2d) 808, 812, was stated to be that of reimbursing the employer *to the extent of his contribution under the act, the workman taking the excess.*[12]

It is not amiss to call the attention of trial courts to the importance, in actions brought under § 176.06, subd. 2, against a third-party tortfeasor, of requiring a special verdict on the issue of special damages for medical expenses. In the absence of such special verdict, it is impossible to determine whether the jury allowed anything

[11] See, § 176.01, subd. 1.

[12] We have not overlooked the report of the interim commission on workmen's compensation submitted to the 1953 legislature or the revision of the compensation act (L. 1953, c. 755). Insofar as significance is to be attached to a subsequent legislative amendment, we find nothing in such amendment, or in the report on which it was based, to change our conclusion.

to the employee for medical expenses. In a subsequent subrogation action by the employer—or his insurer—the employee should be required to reimburse the employer for medical expenses paid *only to the extent that he has received an award therefor under the jury's verdict.*

The orders appealed from are affirmed.

Affirmed.

