736 So.2d 1098 (1998)
MILLER AND MILLER CONSTRUCTION COMPANY, INC.
v.
Gary Wayne MADEWELL.
No. 2970084.
Court of Civil Appeals of Alabama.
June 5, 1998.
Rehearing Denied July 24, 1998.
David M. Wilson and Nicholas W. Woodfield of Janecky, Newell, Potts, Wilson, *1099 Masterson & Smith, P.C., Birmingham, for appellant.
J. Barton Warren, Huntsville, for appellee.
YATES, Judge.
Gary Wayne Madewell sued his employer, Miller and Miller Construction Company ("Miller"), seeking workers' compensation benefits for injuries he sustained on November 10, 1994, during the course of his employment. Madewell also asserted a products liability claim against various third-party defendants. Madewell subsequently settled the products liability claim against the third-party defendants for $400,000. The third-party defendants were dismissed with prejudice, pursuant to a pro tanto release.
Thereafter, Madewell moved for a summary judgment, contending that under § 25-5-77, Ala.Code 1975, he was entitled to future medical expenses from Miller. Miller also moved for a summary judgment, contending that it should not be responsible for Madewell's future medical expenses until he had exhausted the proceeds he had received from the third-party defendants. On June 3, 1997, the court, relying on Bussen v. BE&K Construction Co., 728 So.2d 617 (Ala.Civ.App.1997),[1] entered a summary judgment in favor of Madewell. The court still had before it the issues of loss of earning capacity and permanent partial disability. Following ore tenus proceedings, the court, on September 15, 1997, entered an order finding, among other things, that Miller had paid Madewell $4,138 in temporary total disability benefits and had paid $20,494.05 for medical expenses incurred by Madewell. The court recognized that Miller's subrogation claim totaled $24,632.05 and entered a judgment accordingly. Miller appeals.
The sole issue is whether the court erred in entering a summary judgment in favor of Madewell on his claim for future medical benefits. Miller has provided this court with an excellent brief; it argues that this court should reconsider its ruling in Bussen. In Bussen, this court was faced with the question whether an employer is entitled, under § 25-5-11(a), Ala. Code 1975, to subrogation of future medical expenses not yet incurred by an employee, where the employee has received a settlement from a third-party tortfeasor in an amount that exceeds the compensation payable under the Workers' Compensation Act. Section 25-5-11(a) permits an employee to proceed against his employer for compensation benefits and, at the same time, to proceed against any other party who may also be liable for the employee's injuries. Section 25-5-11(a) states, in part:
"(a) ... If the injured employee ... recovers damages against the other party, the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation. If the damages recovered and collected are in excess of the compensation payable under this chapter, there shall be no further liability on the employer to pay compensation on account of the injury or death. To the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of the compensation theretofore paid on account of injury or death.... For purposes of this amendatory act, the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee...."
Section 25-5-11(e) provides:
"(e) In a settlement made under this section with a third party by the employee... the employer shall be liable for that part of the attorney's fees incurred in the settlement with the third party ... in the same proportion that the amount of the reduction in the employer's liability to pay compensation *1100 bears to the total recovery had from the third party. For purposes of the subrogation provisions of this subsection only, `compensation' includes medical expenses, as defined in Section 25-5-77, if and only if the employer is entitled to subrogation for medical expenses under subsection (a) of this section."
In Bussen, which I authored, I expressed the opinion that an employer's liability for an employee's future medical expenses is not terminated by the employee's settlement with a third-party tortfeasor, stating:
"Section 25-5-11(a) relieves an employer from its obligation of making further compensation payments when an employee recovers damages from a third-party action that are in excess of the amount of compensation payable under the Act. `Compensation' refers to compensation as defined in § 25-5-1(1) and not the expanded definition of `compensation' found in § 25-5-11(e), which includes medical expenses. The definition of `compensation' found in § 25-5-11(e) is expressly limited to that subsection. Therefore, § 25-5-11(a) does not terminate the employee's right to the payment of future medical benefits when he has recovered damages from a third-party action that are in excess of the compensation payable under the Act. The legislature's refusal to expand the definition of `compensation' for purposes of § 25-5-11(a) indicates an intent not to terminate an employee's right to future medical benefits when he recovers third-party damages that exceed the amount of compensation payable under the Act."
728 So.2d at 619. Bussen was further premised on the fact that the Act speaks in terms of past payments and not in terms of future payments. Based on my interpretation of the statute and on basic principles of subrogation, I wrote, "An employer's right to reimbursement for medical benefits expended on behalf of the employee... does not accrue until the employer has actually expended, or paid out, those medical benefits on the employee's behalf." Id., at 620.
The holding in Bussen should not in any way be construed or interpreted to mean that the employer's right to subrogation or reimbursement for medical expenses that it has paid on behalf of an employee is limited to only those expenses incurred through the date of the third-party recovery by the employee.
As Judge Crawley pointed out in his dissent in Bussen, the problem created by the statute is whether the employer will be able to collect, at a later date, money it has expended on behalf of the employee. "Upon receipt from the third party and after payment to the insurer of an amount for `benefits expended,' the balance of the proceeds of a third-party recovery will be paid to the worker, who may or may not reserve a sufficient amount to reimburse the insurer for future expenses." 728 So.2d at 621 (Crawley, J., dissenting). Judge Crawley argued that this court should allow the insurer to withhold or suspend payment of medical benefits "until the amount of such benefit payments equals the balance of the third-party recovery, at which time the insurer would resume payment of the appropriate benefits." Id., at 621. This would require the employee to exhaust portions of his third-party recovery, which could have been compensation for injuries or damages sustained that are not contemplated by the Act, such as past and present physical pain and suffering and mental anguish. Would it be fair and equitable to require the employee, after he or she has assumed the risk and expense of third-party litigation, to contribute portions of any recovery toward payment of medical expenses for which the employee is entitled to be compensated under the Act? The Alabama Court of Appeals recognized this problem in Poultry & Egg Co. v. Smith, 41 Ala.App. 665, 149 So.2d 838 (1962).[2] In Smith, an *1101 injured employee sued a third-party tortfeasor and included in his complaint a claim for medical expenses. A consent judgment was entered in favor of the employee, awarding the employee $7,500. Thereafter, the employee sued his employer to recover medical expenses; the court awarded the employee $410.85. The question on appeal was whether an employee is entitled to recover medical expenses from the employer, when the employee had recovered those medical expenses from a third-party in an earlier suit seeking reimbursement of medical expenses. Id. In affirming the judgment, the Alabama Court of Appeals stated:
"In Jacobsen v. State Industrial Accident Commission, 212 Cal. 440, 299 P. 66, the court said:
"`... it must be assumed that inherent in a judgment for damages recovered by an injured employee there may be the element of compensation for past physical pain and mental suffering or even present physical pain and mental suffering not affecting his ability to work. These are elements of recoverable damage from the third-party tortfeasor which the Industrial Accident Commission has no jurisdiction to consider and fix. It would be manifestly unfair to the employee, having assumed the hazard and expense of litigation, to have the amount of the judgment attributable to these elements of damage consumed by any award made by the commission.'
"It was held in that case that damages for physical pain and mental suffering recovered by an employee in an action against a third person were not subject to be consumed by an award made by the Industrial Commission in favor of the employer for expenditures under the Workman's Compensation Act.
"In the case of Dockendorf v. Lakie et al., 240 Minn. 441, 61 N.W.2d 752, the Minnesota court said:
"`It is not amiss to call the attention of trial courts to the importance, in actions brought under § 176.06, subd. 2, against a third-party tortfeasor, of requiring a special verdict on the issue of special damages for medical expenses. In the absence of such special verdict, it is impossible to determine whether the jury allowed anything to the employee for medical expenses. In a subsequent subrogation action by the employeror his insurer the employee should be required to reimburse the employer for medical expenses paid only to the extent that he has received an award therefor under the jury's verdict.'
"The Minnesota statute requires a special verdict on the issue of special damages. Our statute does not require a special verdict for damages for medical expenses, and no method is provided for the segregation of the amount of the judgment into parts attributable to physical pain and mental suffering, on the one hand, and to hospital and medical expenses, etc., on the other, as the California court, in the Jacobsen case, supra, suggested might be done so as to enable the court to ascertain the amount of the verdict attributable to elements of damage compensable under the act."
41 Ala.App. at 668, 149 So.2d at 840 (emphasis in original). The court held that it could not determine from the record that any amount had been awarded to the employee for medical expenses and that it could not resort to speculation as to what portion, if any, had been awarded the employee for medical expenses.[3]Id.
*1102 Minnesota, the state on whose act our Workers' Compensation Act is modeled, has enacted comprehensive legislation dealing with third-party liability. See Minn.Stat., § 176.061 (1996). When an employee has received workers' compensation benefits and has a third-party tort action, both the employee and the employer have a number of options available to them under § 176.061. See Folstad v. Eder, 467 N.W.2d 608 (Minn.1991). Minn. Stat., § 176.061, subd. 6, provides a formula for the division of damages recovered by either the employee or the employer in an action against a third-party tortfeasor, including a credit against the remaining balance of any proceeds paid to the employee, after division of the proceeds pursuant to a formula, for any future benefits the employer may be obligated to pay. Additionally, Minn.Stat., § 176.061, subd. 7, provides a separate cause of action to the employer against the third-party tortfeasor to recover amounts that it has paid, or will be required to pay, for the employee's medical expenses. Finally, Minn.Stat., § 176.061, subd. 10, provides a right of indemnity to the employer for any compensation paid or payable under the chapter, including a right of indemnity for medical compensation.
I recognize the problems presented by the Act as currently written with regard to subrogation and future medical benefits. I firmly believe that it is this court's duty, and the duty of the other courts of this state, to interpret and construe the law as it written by our legislature. This is what I have done. Minnesota's legislature has enacted legislation to address the problem of future medical benefits when a third-party tortfeasor is responsible for an employee's injuries. The problems presented by the Act are for the legislature to address not this court. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur in the result.
CRAWLEY and THOMPSON, JJ., dissent.
CRAWLEY, Judge, dissenting.
I must respectfully dissent. See my dissent in Bussen v. BE&K Constr. Co., 728 So.2d 617 (Ala.Civ.App.1997).
THOMPSON, Judge, dissenting.
In my special concurrence in Bussen v. BE&K Construction Co., 728 So.2d 617 (Ala.Civ.App.1997), I maintained that the correction of this problem in the Workers' Compensation Act was the duty of the legislature. I was not, however, comfortable with the result in that case. The policy goal behind Alabama's Workers' Compensation Act clearly disfavors double recoveries. After considering the arguments presented by counsel for Miller and Miller in the excellent brief submitted to this court, I have reevaluated my position in Bussen; I believe that the holding in Bussen is contrary to Alabama's public policy against double recovery and cannot stand. After much careful consideration, I am now convinced that this problem requires an immediate resolution and that caselaw and the legislature's intent in enacting our workers' compensation statute provide the basis for a more reasonable interpretation of § 25-5-11(a), Ala.Code 1975.
In Bussen, this court determined that the legislature's failure or refusal to include medical expenses within the definition of "compensation" for purposes of § 25-5-11(a) indicated that the legislature chose not to terminate an employee's right to future medical benefits. In so holding, this court relied on a general rule of statutory construction that words in a statute should be given their ordinary and plain meaning. Id. However, as Miller and Miller points out in its brief on appeal:
"`A thing may be within the letter of a statute and not within the meaning or *1103 spirit, or it may be within the clear meaning or spirit and not within the letter. Courts, in construing statutes, often look less to the letter than to the context, the spirit, or to the meaning of the statutes to arrive at the true intent of the lawmaker. Statutes are often drawn [unartfully]. Apt words are not always used, and perspicuity and precision are not always observed, by those who draft statutes. The whole statute under construction, as well as others, must sometimes be looked to, to ascertain the true meaning and intent.'"
City of Birmingham v. Hendrix, 257 Ala. 300, 307, 58 So.2d 626 (1952) (quoting City of Birmingham v. Southern Express Co., 164 Ala. 529, 537-38, 51 So. 159, 162 (1909)).
The primary goal of Alabama's workers' compensation legislation is to assist the injured worker without granting the worker a double recovery. Holder v. Weatherly, 456 So.2d 812 (Ala.Civ.App.1984). The goal of preventing double recoveries is not promoted by this court's holding in Bussen.
The purpose of subrogation is to prevent a plaintiff from recovering twice for the same injury.
"The principle of indemnity was the primary reason for the adoption of subrogation in insurance cases. See International Underwriters, supra [Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala.1989)]; North River Ins. Co. v. McKenzie, 261 Ala. 353, 359, 74 So.2d 599, 604 (1954). The insurer's obligation was to make the insured whole, but not more than whole. Accordingly, subrogation originally served to prevent the insured from receiving a double recovery by first collecting the insurance proceeds and then suing the tort-feasor or other third parties, so as to recover again for his injury. A second reason for the adoption of subrogation in insurance cases is what has been called `the moralistic basis of tort law as it has developed in our system.' Kimball & Davis, The Extension of Insurance Subrogation, 60 Mich. L. Rev. 841, 841 (1962). In other words, the wrongdoer should bear the burden of reimbursing the insurer for payments it made to the insured because of the wrongdoer's actions. See International Underwriters, supra; City of Birmingham v. Walker, 267 Ala. 150, 158, 101 So.2d 250, 256 (1958)."
Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772, 774 (Ala.1990) (emphasis supplied). Our supreme court has also stated that "`subrogation is an attempt to insure that a debt is ultimately discharged by the party who is primarily responsible for the discharge of the debt.'" Star Freight, Inc. v. Sheffield, 587 So.2d 946, 954 (Ala.1991).
Madewell entered into a settlement with the third-party tortfeasor, the party who is primarily responsible for his injury. Miller and Miller recovered from the proceeds of that settlement the amounts it had already expended for the benefit of Madewell; those proceeds far exceed Madewell's damages. In affirming the trial court's denial of Miller and Miller's request that Madewell's right to future medical expenses be suspended until he exhausts his recovery from the third-party tortfeasor, this court requires Miller and Miller to compensate Madewell for a wrong for which it is not primarily responsible. This court's judgment and the trial court's judgment allow Madewell a double recovery, in contravention of the goal of Alabama's workers' compensation legislation to prevent double recoveries.
As Judge Crawley argued in his dissenting opinion in Bussen, many courts permit an insurer to resume payments of future expenses after the plaintiff exhausts the proceeds of the recovery from the third-party tortfeasor. See Bussen v. BE&K Construction Co., 728 So.2d 617 (Ala.Civ. App.1997) (Crawley, J., dissenting) (citing Bilodeau v. Oliver Stores, Inc., 116 N.H. 83, 352 A.2d 741 (1976); Richard v. Arsenault, 349 Mass. 521, 209 N.E.2d 334 *1104 (1965)). This is clearly the better method under the Alabama workers' compensation statute as well.
"If the statute does not take pains to deal explicitly with the problem of future benefits, but merely credits the carrier for compensation paid, or compensation for which the carrier is liable, the correct holding is still that the excess of third-party recovery over past compensation actually paid stands as a credit against future liability of the carrier."
2 A. Larson, Larson's Workers' Compensation § 74.31(e) (1997).
Because I believe the double recovery allowed under the holding of this case is against public policy and is contrary to the basic purpose of Alabama's Workers' Compensation Act, I would reverse the summary judgment in favor of Madewell. Therefore, I must respectfully dissent.
NOTES
[1] Bussen is presently pending on certiorari review in the Alabama Supreme Court.
[2] Smith involved the statutory predecessor to § 25-5-77, Ala.Code 1975. Section 25-5-77 provides, in part, that if an insurer of the employee has paid or is liable for the medical expenses of the employee, or if the employee is entitled to such expenses from any other source by virtue of agreement or understanding or law, the employer shall not be responsible to pay any part of the expense.
[3] In the present case, as in Bussen, it cannot be determined what amount of the settlement proceeds, if any, is attributable to damage such as physical pain and suffering and mental anguish.